W. B. TROGDEN et al. v. R. J. WILLIAMS et al.

(Filed 20 March, 1907).

1. **Executors—Power to Sell—Option of Purchase.**—A power under a will to executors to sell land is valid, but does not include the power to give an option to purchase.

2. **Same—Delivery of Deed—Condition Precedent—Tender of Price.** A provision in an option that those to whom it was given should make partial payment for the land and secure the balance of the purchase-price by mortgage thereon within the time specified is binding only upon an unconditional acceptance of and a compliance with the terms, and the delivery of the deed is not a condition precedent to the tender of the price in the absence of a definite agreement to that effect.

3. **Same—Two Executors—Joint Powers—Waiver.**—One of two executors may not waive the condition of time of an option given for the purchase of lands of his testator and fix no time limit for payment, in the absence of express power; and where there are two executors clothed with the power to sell land, such power must be exercised by them jointly; and a waiver by one, otherwise having the power, does not bind the other. This also applies to sale of lands by executors under section 82, Revisal.

4. **Same—Intervening Rights—Waiver—Time the Essence.**—Where one of two executors who have given an option for the sale of

lands of their testator waives the conditions thereof, and the other, after notice of election by those having the right to take the lands embraced in the option, writes that he is willing to make the deed, but could not comply with further demands not therein contained, and afterwards said he would make the deed with his co-executor: the letter is not a waiver; and such waiver would be inoperative to revive the extinct option and affect intervening rights, time being of the essence of the contract.

5. **Same—Recorded Option—Notice—Cloud upon Title—Liability.**—A recorded option on lands given by executors having the power under the will is notice of its terms only, and the time within which it should be exercised; and an unregistered waiver of the time limit by the executors in consenting to execute the deed thereafter is inoperative against a purchaser for value under a sufficient and subsequently registered conveyance, made by those who had the right of election to take the lands embraced in the option, and a court of equity will not place a cloud upon the title by making a decree requiring the executors to convey such title as they may have; and the executors are not liable in damages upon refusing to make such conveyance.

CIVIL ACTION, heard upon facts agreed, by *Allen, J.,* April Term, 1906, of the Superior Court of ONSLOW County. Judgment for defendants; plaintiffs appealed.

The plaintiffs prosecute this action against the defendants, R. J. Williams and H. C. Foscue, executors of Narcissa S. Fonville, deceased, for the purpose of compelling them to specifically perform a contract, or option, in regard to a body of land lying in Onslow County. The other defendants, devisees of. Mrs. Foscue and Remick, who purchased from them the same land, are brought in as parties, to the end that they may be bound by the judgment, no relief being asked against them. The cause was submitted to the Court for decision upon an agreed statement of facts, the material part of which is as follows:

The land in controversy, some 5,000 acres, belonged to Mrs. Narcissa S. Fonville, who died during the year 1898, having first made and published her last will and testament,

144—13

appointing the defendants, Williams and Foscue, executors thereof. The will was admitted to probate July, 1901, and the executors duly qualified. The testatrix gave the land to her husband, E. W. Fonville, for life, remainder, as hereinafter set forth, to her children, the defendant devisees. There are a number of special provisions in the will regarding the distribution of the estate, including the proceeds of the land if sold during the life of the testatrix or by the executors after her death, which do not materially affect the merits of this appeal. As if to remove any "obscurity or doubt," she says in the ninth item: "I do hereby expressly empower my executor or executors of this my will to sell any part or the whole of my land or real estate that I may have any interest in at my death; either for payment of my debts or for any other purpose of this will at his discretion. * * * Giving this ample power to enable him or them to take advantage of favorable opportunities of sale, etc. * * * I urge them, if they see fit to make a sale or are obliged to do so to make assets, that they do so at the earliest good opportunity, if possible within three years after my death."

On 16 January, 1905, the defendants, Williams and Foscue, executors, executed and delivered to the plaintiffs, Trogden and Patterson, a paper-writing, the material parts of which are as follows: "This memorandum or agreement entered into, etc., witnesseth: That the said parties of the first part, for and in consideration of the sum of $50 to them in hand paid * * * have agreed, and do hereby covenant and agree, to sell to the parties of the second part, their heirs or assigns, at the option of the said parties of the second part, at any time within the term of ninety days from the date hereof and upon the terms hereinafter set forth, a certain tract or parcel of land, etc. * * * If the parties of the

second part shall, within the time herein specified, elect to purchase said land, then and in that event they shall pay to the parties of the first part, their heirs or assigns, the sum of $10,000 as the purchase-price of said land, and in full consideration thereof, as follows, to-wit: The sum of $5,000 in cash and the remainder of said purchase-money one year after date of first payment; said deferred payment to be secured by a mortgage upon said land, said deferred payment to be credited for amount paid for option. And the parties of the first part covenant and agree, upon the payment of the said purchase-money, to convey said lands to the parties of the second part, their heirs or assigns, by good and sufficient deed or deeds."

This instrument was duly proven and registered in the office of the Register of Deeds of Onslow County on 4 May, 1905. On 15 April, 1905, the defendant R. J. Williams, at his home in Duplin County, in a conversation had with the plaintiff W. B. Trogden, who went there for that purpose, respecting the sale of said land pursuant to the terms and provisions of said paper-writing, said to him, the said Trogden, that it was "not necessary to tender the money," and that said executors were willing to give plaintiffs "a good deed." Subsequently thereto plaintiffs tendered to the said Williams and Foscue, as executors, a deed for the said land, with the names of the said executors, and also all of the devisees and heirs of said Narcissa S. Fonville, and their wives and husbands, as grantees, which said deed the said devisees and heirs at law refused to execute; whereupon it was returned to the plaintiffs with notice that said heirs and devisees refused to sign the same. No other deed has been tendered said executors for their signature, nor have they tendered any deed to the plaintiffs. At the conversation between plaintiff Trogden and defendant Williams on 15 April, 1905, the defendant Foscue was not present.

On said 15 April, 1905, plaintiffs were willing and able to pay, and have been at all times since said day, the amount named in the paper-writing as the purchase-money of said land.

On 14 June, 1905, the defendants, James H. Fonville, Narcissa Williams, and E. B. Fonville, devisees and heirs at law of the said Narcissa S. Fonville, deceased, elected to take their shares of said land in special, and so notified said executors.

On 28 June, 1905, all of the devisees and heirs at law of said Narcissa S. Fonville, deceased, with their respective husbands and wives, except H. C. Foscue and wife, executed to defendant Remick a paper-writing in the following words: "Received of R. C. Remick the sum of two hundred and fifty dollars, being part of the purchase-price of all the lands owned by Narcissa Fonville, deceased, in Onslow County, the balance of the purchase-money, to-wit, eleven thousand seven hundred and fifty dollars, to be paid as soon as a full, complete, and accurate examination of all titles are made and the deed signed by all the heirs at law and parties interested in said estate of Narcissa Fonville, and the same shall have been executed properly. This 28th day of June, 1905." This paper-writing is signed by defendant Williams, executor, as the other devisees and heirs at law, save Mr. and Mrs. Foscue. Its execution is duly proven and registered in the office of the Register of Deeds, 10 July, 1905. In both paper-writings a tract of seventy-five acres of the Fonville land is excepted. In accordance with the said paper-writing and the agreement between the parties, defendant Remick caused the title to said lands to be examined, and deposited the sum of $11,750 in the Atlantic Trust and Banking Company of Wilmington, N. C., being the unpaid balance purchase-money of said lands, under the instructions of the

devisees and heirs at law of Narcissa S. Fonville, who instructed the said Remick to let said money remain in said bank until after the termination of this suit; and, if this suit should be decided against the claim of the plaintiffs, that they would execute a deed for the said land to the said Remick and take the money. That the said money was deposited by agreement in the name of J. C. Foster, trustee, with instructions to pay the same, with the accrued interest, to the heirs and the devisees of Narcissa S. Fonville upon their executing to said Remick a good and sufficient deed in fee for the said lands, with full warranties. The said sum of $12,000, however, is understood to include the purchase-price for the interest of Mrs. Gertrude Foscue in said lands, as well as those who signed the contract of agreement. The executors had immediate notice of the execution of the paper-writing of 28 June, 1905. There was some correspondence had between plaintiffs and defendants subsequent to 21 May, 1905, which it is unnecessary to set out in full. During the month of September, 1905, defendant Foscue informed one of the plaintiffs that he was willing to sign a deed as executor, whereupon the plaintiff said that he was willing to accept a deed from the executors. This was subsequent to the institution of this action on 3 July, 1905. The specific relief asked by plaintiffs is: "That defendants Williams and Foscue, as executors as aforesaid, execute to the plaintiffs a sufficient conveyance of the said land as provided in said agreement; for $3,000 damages, and for other and further relief." The action was instituted in Guilford County and removed to the county of Onslow for trial. Defendant Remick answered, admitting portions of the complaint, denying other portions and pleading affirmatively: 1. That the paper-writing of 16 January, 1905, was a mere option, which defendants had no power, under the will, to

give. 2. That it expired on 16 April, 1905. 3. That he purchased from the real parties in interest on 28 June, 1905, and was ready, willing, and able to comply with his contract. He demanded judgment against the plaintiffs for damages for interfering with his rights, etc., and against his co-defendants for specific performance. Defendants' executors answer generally. The other defendants, heirs at law, answer denying the power of the executor to give the option under which plaintiffs' claim, allege their election to take the land under the will and admit the execution of the contract with defendant Remick. His Honor, upon the agreed statement of facts, rendered judgment: 1. That the plaintiffs are not entitled to the relief prayed. 2. That defendant Remick is the equitable owner of an undivided four-fifths interest in the land, and that upon payment of the shares of the purchase-money deposited by Remick in the bank, the defendants who executed the paper-writing of 28 June, 1905, execute a deed for their interest in said land, and that the decree should have the effect to transfer such interest, etc. Plaintiffs duly excepted and appealed. The record states that defendant Narcissa S. Williams excepted and appealed. No appeal bond by her is in the record and no brief is filed in her behalf.

*Robert M. Douglas* and *Frank Thompson* for plaintiff.
*Davis & Davis* and *H. McClammy* for defendant.

CONNOR, J., after stating the case: In the judgment rendered by his Honor he sets out, with his usual clearness, the question presented by the case agreed.

First, does the will of Narcissa S. Fonville confer upon the executors the power to sell the lands in controversy? While the language of the will in regard to the disposition of the estate, endeavoring to anticipate possible or probable con-

TROGDEN *v.* WILLIAMS.

tingencies, is somewhat obscure, we concur with his Honor
that the executors had the power, under the will, to sell the
lands. We do not attach importance to the suggested limit
of three years within which they should exercise the power.
In the view which we take of the case it is not material. The
next question presented is: "If the power of sale is conferred
by the will, does this power include the power to execute an
option for ninety days? We concur with his Honor that it
does not. There is a marked and well-defined distinction
between a contract in which both parties are bound to sell
and convey land, postponing the delivery of the deed and
payment of the purchase-money until some fixed day, even
when made dependent upon some condition, and a mere
promise on the part of the promisor to permit the promisee
to elect at the end of a fixed day whether he will at that time
enter into a contract of purchase. The relative rights and
obligations are entirely different and are governed by dif-
ferent principles. "An option is a right acquired by con-
tract to accept or reject a present offer within a limited or
reasonable time in the future." 21 Am. and Eng. Enc.
Law, 924; *Sitterding v. Grizzard,* 114 N. C., 108; *Hopwood
v. McCausland,* 120 Iowa, 218; *Litz v. Gosling,* 93 Ky.,
185; 21 L. R. A., 127. The term is well defined in the case
of *Black v. Maddox,* 104 Ga., 157, as "The obligation by
which one binds himself to sell and leaves it discretionary
with the other party to buy, which is simply a contract by
which the owner of property agrees with another person that
he shall have the right to buy the property at a fixed price
within a certain time." The agreement is, of course, in-
valid unless supported by a valuable consideration. We take
it that there can be no doubt that such is the legal definition
of the agreement executed by the defendants' executors with
plaintiffs on 16 January, 1905. The consideration is suffi-

cient to support the promise. Does the power to sell include
the power to enter into an agreement not to sell to any one
save the plaintiffs for ninety days, and at the end of that
time to sell to no one else, provided they pay the purchase-
price? As is correctly said by his Honor, an option is easily
distinguished from a contract to sell, coupled with one to
buy, "and is at least temporarily destructive of the power
which is said to include it. During the ninety days, if the
option is valid, the power to sell is suspended and the execu-
tors have no right to accept an offer to buy the land, however
advantageous it may be."

The learned counsel for plaintiffs insist that, conceding
this to be true, an option, when accepted, merges into a con-
tract. That "after the continuing offer or the option is ac-
cepted any difference between the two disappears, and the
resulting contract is not affected by the nature of the ante-
cedent offer." 21 Am. and Eng. Enc. Law., 926. This is
undoubtedly true, and this contention presents the next ques-
tion stated by his Honor: "Was it sufficient within the
ninety days to give notice of acceptance without tender or
payment of the purchase-money?" The answer depends
upon the terms of the option. The contract to purchase, by
which the relation of vendor and vendee should be estab-
lished, is not to be completed by notifying the executors of
acceptance of the continuing offer; but that if "they shall,
within the time hereinafter specified, elect to purchase said
land, then and in that event they shall pay" the purchase-
price, etc. Instances may be found in the books wherein
the option is converted into a contract by giving notice of
acceptance, and it seems, answering one of the questions dis-
cussed, it is not necessary that such notice should be in writ-
ing. In the option before us, as we have seen, payment of
one-half the purchase-money and securing the other half con-

stitute the method of electing to purchase. In *Weaver v. Burr,* 31 W. Va., 736, the material facts are singularly similar to the case before us. *Woods, J.,* states and discusses the question in the same order adopted by his Honor. When he reaches this question, the learned justice says: "The period of sixty days from 7 June, 1883, mentioned in the option, within which plaintiffs had the privilege of buying the land, * * * expired on the 6th day of August, 1883. During the whole of that period and during the whole of the 6th of August plaintiffs had the privilege of converting the offer of John Burr into a valid and binding contract by an unconditional acceptance of and compliance with the terms thereof. They could not do so by any other acceptance, nor could they comply with the terms in any other manner than by actual payment or tender of the whole price of the land before the sixty days expired. Neither could they withhold the payment, or tender of payment, until a proper deed was executed or survey could be made and the excess number of acres ascertained. It was their privilege to accept unconditionally the terms offered and comply with them by paying or tendering the cash within the sixty days, and thus secure to themselves the right to compel Burr to perform his contract. The delivery of the deed and the payment of the price of the land were intended to be contemporaneous acts, and it was not intended that the delivery of the deed should be a condition precedent to the tender of the price." The case is easily distinguished from *Paddock v. Davenport,* 107 N. C., 710.

*Shepherd, C. J.,* in *Cozart v. Herndon,* 114 N. C., 252, says: "It is well settled that in order to constitute a contract there must be 'a proposal squarely assented to.' If the proposal be assented to with a qualification, then the qualification must go back to the proposer for his adoption, rejection or amendment." Clark on Cont., 369; Cyc., 265.

Applying these elementary principles to the facts before us, we cannot sustain the plaintiffs' contention that there was an acceptance of the option. Assuming, as we hold, that a tender was necessary on the day or within the time fixed by the option, it is conceded that none was made; therefore, unless there was a valid waiver, the option, with all of its incidents, ended on 16 April, 1905. The effect of a waiver is to release one of the parties from the terms of the original proposition and substitute for it other terms. If this be done by language, the terms of the new proposition are to be ascertained by the words used; if by conduct, the law gives to such conduct a construction which secures a fair and just result. The defendant Williams, executor, waived, by the language used, the tender of the money according to the terms of the option. No time was then fixed for the payment—the matter in that respect was at large. An option, with other terms, so far as Williams was concerned, was given. Assuming, for the purpose of plaintiffs' argument, that both executors were bound by the language used by Williams, and eliminating any question of the statute of frauds upon the principle upon which *Alston v. Connell,* 140 N. C., 485, and *Lumber Co. v. Corey,* 140 N. C., 462, are based, we have an option, without any limit as to time of acceptance or payment of the money. If it be doubtful whether the power to give an option for ninety days is included in the power to sell, certainly an option without limit cannot be sustained. Of course, if there had been an acceptance of the original option and a payment or tender of the money, the status of the parties would change from that of a proposal by the executors to a contract between them and the plaintiffs for sale; but, as we have seen, in the most favorable view of the transaction for plaintiffs, the option never merged into a contract, and the relation of vendor and vendee was never established. The

executors, by waiving the tender, had no right to demand that the plaintiffs purchase the land—it remained an unaccepted proposal to sell whenever the plaintiffs paid the purchase-money. The question whether, if they had done so within a reasonable time, the relation of vendor and vendee would have been established is not presented because they have never tendered the money. The only fact in that connection, found in the case agreed, is that "subsequently thereto the plaintiffs tendered a deed to the executors, in the execution of which the devisees and heirs at law were required to join. The plaintiffs encounter, in this aspect of the case, two difficulties: The executors never promised that the devisees and heirs at law would join in the execution of the deed. It is true that they did promise to convey by "good and sufficient deeds." It is evident that all parties had in view the power of sale conferred upon the executors by the will, which, as we have seen, was sufficient to enable the executors to convey, and whose deed plaintiffs now say they are willing to accept. Therefore, in demanding the execution of the deed by the devisees, they were not accepting the proposal as made, but imposing a condition upon their acceptance. It may have been desirable to have the signatures of the devisees to the deed, but it was not so "nominated in the bond." Again, the acceptance was not to be manifested by tendering a deed, but by paying "a part of the purchase-money and securing the balance" under the option as changed by the waiver within a reasonable time. This they have never done. The fact that they were willing and able to do so is not sufficient. There are a class of cases wherein this averment is sufficient. This is not one of them. There had been no refusal on the part of the executors to perform their part of the contract, which relieved the plaintiffs of the duty of an offer to pay the money. *Grandy v. Small,* 50 N. C., 50.

While we agree with the learned counsel for the plaintiffs that a tender of the purchase-money to one of the executors on the day or within the time fixed in the option would have been sufficient, we are of the opinion that a change in the terms of the option, or giving a new option by one executor, did not bind the other. It is true, as insisted by counsel, that in respect to the personal estate of a testator, the title to which vests in the executors jointly, one of them may sell or dispose of it, collect, compromise and release debts, cancel mortgages and do any other acts necessary and proper in the discharge of their duties. 17 Am. and Eng. Enc. Law, 620; *Hoke v. Fleming,* 32 N. C., 263.

The rule is different, however, when a power to sell land is conferred upon two executors. The power must be executed by them jointly; they must join in the sale and execution of the deed. 22 Am. and Eng. Enc. Law, 1099; *Debow v. Hodge,* 4 N. C., 368; *Wasson v. King,* 19 N. C., 262; *Smith v. McCrary,* 38 N. C., 204. Provision is made by statute to meet cases of death, etc. Revisal, sec. 82. We are of the opinion that the waiver of Williams did not bind his co-executor Foscue. Therefore the option of 16 January, 1905, was not accepted according to its terms. The plaintiffs' counsel insist that, conceding that the executor Foscue was not bound by the waiver of his co-executor, he ratified it by his letter of 28 July, 1905. Without analyzing the letter, which we think falls far short of the legal effect sought to be given it by the plaintiffs, it would seem to be sufficient to say that it was not written until a month after the devisees of Mrs. Fonville had elected to take the land in its unconverted form and so notified the executors. This they were entitled to do. The power of sale was conferred for their benefit; after the expiration of the option on 16 April, 1905, their right to put an end to it by an election could not be prevented by any action on the part of the executors after they had been notified of the election.

The defendants' devisees had given the defendant Remick an option and he had placed the amount of the purchase-money in the bank for their benefit. Whatever may be the retroactive effect of a ratification of a contract made by one dealing with his own property, it would be difficult to find any sound principle upon which to sustain the right of an executor, with a naked power of sale, to ratify a void option to the prejudice of the beneficial owners of property more than ninety days after its termination. We do not find in Mr. Foscue's letter of 28 July, 1905, language the legal effect or intention of which indicates a ratification of his co-executor's waiver of the tender; on the contrary, while he, in a very proper spirit, discusses the moral phases of the transaction, he expressly points out the difficulty which stands in the plaintiffs' way. Among others, referring to the demand of the plaintiffs and the refusal of the heirs to sign the deed, he says: "You, we, nor the Court can make them sign the deed, and you won't have the deed unless the heirs sign. Your suit won't lie against the executors for damages, for we are willing to abide the trade." It is true that sometime in September, 1905, Foscue told one of the plaintiffs that he would sign the deed and the plaintiff said that he was willing to accept a deed from the executors. In no aspect could this conversation revive the extinct option and affect rights which had intervened. We have discussed the appeal upon the theory that when an option is given, being, until accepted, binding only on the maker, time is of the essence of the contract; hence, the person to whom it is given must comply with its terms in all material respects. After this is done and a bilateral contract, with all of its incidents, is made, or rather a contract of purchase is entered into, new rights are acquired and new duties imposed. The option is merged into the contract.

We have discussed the questions presented by the case agreed and considered by his Honor because of the importance

of a correct decision to the parties, aided, as we have been, by the full and well-considered briefs and arguments of counsel, and for the further reason that we, nor those who have preceded us, have been heretofore called upon to discuss them except incidentally. It is manifest that the chief value, at this time, of the large body of land in controversy consists in the standing timber upon it. We know from several causes lately before us and from other reliable and public sources of information that contracts of this character are being made in many sections of the State. Much of the timber and mineral wealth of the State is being sought after by persons who take options, binding only the owners and securing to themselves the opportunity to make profit by selling the option. The rapid advance in the value of real estate, together with the meagre knowledge of many of the owners of the real value of their timber and mineral interests, make it the duty of the courts to adhere to the well-settled principle that, when such options are given, time will be deemed of the essence of the contract. *Alston v. Connell,* 140 N. C., 485 (p. 49ʟ).

In *Wells v. Smith,* 7 Paige Chan., 22 (31 Am. Dec., 274), the Chancellor, discussing the question involved, says: "If the purchaser wished to comply with the contract so as to have the benefit thereof, he should have tendered the money at the day, or have offered to pay the same, and to execute the bond and mortgage for the residue upon the delivery to him of a deed of the premises."

The following statement of the law we think correct: "Generally, if a contract be unilateral, as if it be that A will convey provided B shall on a certain day pay a specified sum, time is deemed of the essence of the contract, and the payment of the sum is a condition to the creation of any right in B to the performance of the contract." Note to *Wells v. Smith, supra.*

In *Miller v. Cameron,* 45 N. J. Eq., 95, it is said that when the party taking the option is not originally bound and

cannot be brought into Court, he should be required to show that he had faithfully performed every stipulation on his part. "If he intends to hold the other party to the contract which he has signed, he himself should not be guilty of a moment's trifling without a most satisfactory excuse." It was only after much hesitation and anxious consideration that courts of equity granted decrees for specific performance of unilateral contracts, thinking it more in accordance with sound principles that the aggrieved party be left to his action at law for damages. The rule is settled otherwise, and relief will be granted when the party seeking the aid of the court has complied with the terms of the option. He will not, however, for manifest reasons, be permitted to invoke the equitable doctrine that time is not of the essence of the contract.

The plaintiffs rely upon the case of *Lumber Co. v. Corey,* 140 N. C., 462. In that case, while the general question is discussed, it is expressly said that the "plaintiff tendered performance within the time limited" (p. 470). The plaintiffs say that they are now content to accept the deed of the executors. If there were no other obstacle to decreeing specific performance, it is obvious that such a deed would not prevail as against the equitable title acquired by Remick. The registration of the option, 4 May, 1905, gave no other notice than that the plaintiffs had a right to pay the money and call for the title within ninety days. Nothing else appearing of record, it would seem that Remick became, by the contract of 28 June, 1905, a purchaser for value when he deposited the full amount of the purchase-money in the bank, to be paid when title was made. No deed appearing of record, he was entitled to treat the option as at an end. To make the extension of time to pay the money binding upon subsequent purchasers the option as charged should have been registered. It was a "contract to convey land,"

within the language and purpose of section 980 of the Revisal. While a court of equity might, in some cases, compel the vendor to convey such title as he had and the vendee was willing to accept, we do not think that in a case like the one before us, when all of the parties in interest are before the Court, and their rights capable of adjustment, we should direct a deed to be made which could have no other effect than placing a cloud upon the title and producing further litigation. Such is not the office of a court of equity.

Upon the entire record, we concur with the Judge below that the plaintiffs are not entitled to recover. The decree made by him adjusting the rights of the defendants between themselves is not excepted to. We think it both wise and in accordance with the course and practice of the Court.

The judgment is

Affirmed.