KATHERINE GOINS DOUGLASS v. NOLAN BROOKS; HAZELINE B. CHAMBERS AND HUSBAND, OSBIA CHAMBERS.

(Filed 4 May, 1955.)

**1. Trial § 21—**

Objection based on material variance between allegation and proof should be presented by exception to refusal of motion for judgment for involuntary nonsuit, and not by exception to the charge. Prejudicial error in the charge results in a new trial rather than reversal of the judgment.

**2. Vendor and Purchaser § 3½—**

Where plaintiff alleges a contract of sale and purchase and attaches to the complaint correspondence between the parties together with an agreement, alleging that the writings together with verbal agreements constituted the contract, *held*, the submission of the case to the jury on the theory of the written agreement is not a material variance when the written agreement modifies the agreement as set forth in the prior correspondence only in vendor's favor by making the deed deliverable upon completion of payment of the purchase price rather than upon the down payment.

**3. Evidence § 39—**

Stipulations contained in correspondence prior to execution of the agreement are superseded by the written agreement executed by the parties, but such prior correspondence may be competent to identify the subject matter

of the contract and throw light upon certain of its provisions when it does not vary the terms of the written agreement, and correspondence subsequent to the agreement may be relevant as bearing upon the rights of the parties to declare an abandonment of the agreement but not to establish or vary the terms of the contract.

**4. Vendor and Purchaser § 5b—**

Where a contract respecting realty creates bilateral obligations, on the one hand the obligation to purchase and on the other hand the obligation to sell, as reciprocal considerations, the contract is one of sale and purchase and not an option.

**5. Vendor and Purchaser § 5a—**

An option creates a unilateral obligation upon the vendor to sell upon the stipulations agreed, but creates no obligation on the purchaser to buy, but gives him the right to exercise the option or not at his election. If he fails to exercise the option, he loses only the consideration given for it.

**6. Vendor and Purchaser § 18—**

In the absence of special circumstances, time is of the essence of an option to purchase land, but is not of the essence of a contract of sale and purchase.

**7. Same—**

Where under the provisions of a contract of sale and purchase, the purchase price is to be paid in monthly installments, and the vendor accepts payments in arrears, the vendor may not thereafter treat the contract as abandoned for delinquency in payment until notice and demand for strict compliance with the terms of the agreement have been given the purchaser and the purchaser has failed to comply therewith within a reasonable time.

**8. Vendor and Purchaser § 19a—**

The vendor's renunciation of the contract relieves the purchaser of any necessity of thereafter tendering the purchase price.

**9. Appeal and Error § 8—**

Where, in an action on a contract of sale and purchase, defendants defend solely on the theory that the agreement was an option and that plaintiff had forfeited her rights thereunder by failing to make payments on the purchase price on the dates stipulated, and admit that the land belonged to one defendant although title was registered in the name of another, and that the first defendant had authority to sell, *held*, the parties are bound by the theory of trial, and may not contend on appeal that the defendant having the registered title had not signed the agreement or authorized her signature thereto.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by defendants from *McSwain, Special Judge,* November Term, 1954, of GASTON.

Action to compel specific performance of a contract to convey a described tract of land in Gaston County, containing 40 acres, more or less.

Plaintiff alleged that defendants contracted to sell the land to her for $1,800.00, payable $500.00 cash upon delivery of deed and $1,300.00 at the rate of $40.00 per month, the deferred portion to be secured by deed of trust and to bear interest at the rate of 5% per annum; that she paid the $500.00 on 11 February, 1953, and thereafter paid additional amounts on account of the deferred balance; that in February, 1954, when defendants first indicated dissatisfaction because she was in arrears as to monthly payments, she tendered payment of the entire amount then in arrears and thereafter tendered monthly payments as they became due; that she has been and is now ready, able and willing to pay the purchase price in full but defendants refuse to comply with their obligation to convey the land to plaintiff.

Answering, the defendants say, in substance, that no contract of sale and purchase was made; that they gave plaintiff an option to buy the land at the price of $1,800.00 upon making a cash payment of $500.00, which option plaintiff was at liberty to renew from month to month upon payment of $40.00 per month; that failure to make any such renewal payment voided the option automatically, thereby forfeiting the payments theretofore made as liquidated damages; that time was of the essence of the contract; and that plaintiff, by her failure to renew the option in the manner provided, has no right in law or in equity to compel specific performance.

The evidence, consisting largely of writings, is summarized below.

Plaintiff is the niece of defendant Nolan Brooks, hereinafter called Brooks. Brooks resides in Gaston County. Defendant Osbia Chambers and defendant Hazeline B. Chambers, his wife, reside in New York. Mrs. Chambers is the daughter of Brooks.

Plaintiff became interested in the land in July, 1952, when visiting her relatives in Gaston County, because "of the relationship of this land to the old home place." Brooks, the owner thereof, discussed with her the price and terms upon which she might purchase the land. Further discussion was by correspondence.

Under date of 5 February, 1953, Brooks wrote plaintiff, in part, as follows: "If you will pay $500.00 down and the balance of $1,300.00 on installments of $40.00 per month or more if you can at the rate of 5% interest from date annually, the place is yours. To save a little money have papers drawn I will make out a note to that effect and mail you one copy and I'll have one. I will go ahead and have the deed drawn as you wish after receiving the down payment. Please state just how you want the deed drawn." Plaintiff, by her letter of 11 February, 1953, accepted Brooks' offer, sent him her check for $500.00 and advised him how to draw the deed. She also requested Brooks not to permit any timber to be cut off the property. She also requested information

about the title and the number of acres in the tract. Defendant, by his letter of 18 February, 1953, acknowledged the receipt of the $500.00 down payment and assured plaintiff that no timber had been or would be cut. He also furnished, over his signature, a particular description of the land, being the description set forth in the complaint. As to the title, he had this to say: "When I bought that property from Reece, Leola didn't want me to buy it and to save confusion in making the deed I had Reece to make the deed to my daughter, Hazeline B. Chambers, so when I transferred it I would not have any hitch. So you can consider yourself the owner of the property. I will have the deed made to you whenever you prefer, but the best way is to save a little money for me to make you and myself an agreement and hold till paid for and then deliver the deed."

In April, 1953, Brooks sent to plaintiff a paper entitled, Contractual Agreement, in words and figures as follows:

"Gastonia, N. C.
February 14, 1953.

"This is to certify that Nolan Brooks and Hazeline B. Chambers have sold to Katherine Goins Douglass one tract of land lying in Crowders Mountain Township, containing 40 acres more or less for the sum of $1800.00 for which the said parties have paid $500.00 in initial payment, the balance of $1300.00, she agrees to pay in installments of $40.00 or more per month until the balance is paid in full and at rate of 5% per annum. Deeds are to be delivered to payee (sic) at the completion of the final payment.
　　　　"Signees: (sic)

"Katherine Goins Douglass
"Nolan Brooks
"Hazeline B. Chambers"

The said Contractual Agreement, according to plaintiff's testimony, was signed by Nolan Brooks and Hazeline B. Chambers when plaintiff received it. She signed it and forwarded it to Brooks with her letter to him of 17 April, 1953. In this letter, plaintiff advised Brooks that her plans for changing jobs accounted for her failure to begin making the monthly payments for the land.

When the above letters were written, plaintiff's address was Walwyn's Clinic, Haynes Infirmary, Box 81, Ruston, Louisiana. The tone of these letters reflects an affectionate relationship between the correspondents. From May to October, 1953, plaintiff worked in Houston, Texas. In October or November, 1953, she went to California, where she now resides.

While plaintiff made payments to Brooks from time to time, she did not pay regularly at the rate of $40.00 per month and became in arrears. Brooks testified: "I made no complaint about monthly payments not being made each month until I wrote her the letter she read in Court dated February 8, 1954."

By his letter of 8 February, 1954, Brooks advised plaintiff that she had paid a total of $720.00. (Of this amount, $500.00 was the down payment. The remainder, $220.00, consisted of several items, only three of which are clearly identified by date and amount, namely, an $80.00 check dated 8 June, 1953, a $40.00 check dated 16 July, 1953, and an $80.00 check dated 14 January, 1954.) After acknowledging receipt of the $80.00 check dated 14 January, 1954, Brooks then stated that the payments were in arrears in the amount of $220.00. Excerpts from this letter are as follows: "If you have the slightest doubt that you cannot make these payments, please notify me so I will (know) just where you stand and what to do." Again: "If you think that I will cause too much burden on you, I will resell again for cash and am willing to refund your money all but expenses. Of course I don't want to do that, but a contract is a contract and agreement between two parties. Of course you know that. Think this over and give it your consideration."

On 18 February, 1954, Brooks sent plaintiff a telegram worded as follows: "Have not heard from you yet will refund your money on land. Wire collect immediately." On 18 February, 1954, plaintiff sent Brooks a night letter worded as follows: "Letter of Feb. 8th received also wire. Will comply with request of letter. Payments will be brought to date am forwarding check. Am positioned now to keep payments in advance."

On 19 February, 1954, Brooks sent a telegram to plaintiff worded as follows: "Sending you $800 payment on land. Answer at my expense. Wire immediately."

On 23 February, 1954, Brooks telephoned plaintiff. Testimony of plaintiff is that Brooks told her to send the $220.00 but if she got behind again they were going to have to close the deal. Brooks' testimony was that he advised plaintiff that she had forfeited the contract by falling behind in the payments and that he had a sale for the place and would refund her $800.00. He denied having said anything about her paying the amount then in arrears.

On 25 February, 1954, plaintiff sent a telegram to Brooks, worded as follows: "Confirming telephonic conversation of February 23rd, am wiring $220.00 representing $19.50 interest, and $200.50 principal thereby bringing payments to February 28, 1954. Balance $838.80." On

the same date, plaintiff sent to Brooks a postal money order for $220.00 which was received by him in due course.

On 27 February, 1954, Brooks wrote plaintiff as follows: "Your letter and telegrams and also check received but sorry to say I have already negotiated with some other parties for cash as you have failed to come up to your contract and agreement. I have worked on this for some time, thinking and wondering what is best and right to do, so I just finally decided to close out our deal as you failed and not me. I have had our agreement analized (sic) by my lawyer and they say I have a perfect right to sell the property, don't have to refund your money when you broke the agreement as promised, but for peace sake I am returning your check and $900.00 addition not saying anything of interest, way more than you have invested in the property. That is as fair as I can do. You have a copy of our contract and our agreement and our signature thereon as of Feb. 14-53 and as me giving deed and taking mortgage I wont do that. That is out of the picture. Let me repeat, have already negotiated."

Plaintiff did not accept the $900.00 check tendered by Brooks. Brooks did not accept the $220.00 check sent by plaintiff. Thereafter, plaintiff sent to Brooks monthly checks for $40.00 each, which Brooks refused to accept. This action was commenced 13 March, 1954. The court submitted, and the jury answered, two issues, *viz.*:

"Did the defendant contract to sell the lands described to the plaintiff, as alleged in the Complaint? Answer: Yes.

"Is the plaintiff entitled to have said lands conveyed to her, as alleged in the Complaint, provided the plaintiff pays to the defendants the full balance of the purchase price, with interest, before the execution of said deed? Answer: Yes."

Judgment was entered that the land be conveyed to plaintiff upon her payment, within a prescribed time, of the specified balance due on purchase price. Defendants excepted and appealed, assigning errors.

*Henry L. Kiser for plaintiff appellee.*
*L. B. Hollowell and J. L. Hamme for defendant appellants.*

BOBBITT, J. Appellants do not assign as error the denial of their motions for judgment of involuntary nonsuit. However, they seek indirectly to avail themselves of the accepted rule that a motion for judgment of involuntary nonsuit will be allowed when there is a material variance between allegation and proof. *Andrews v. Bruton, ante,* 93, 86 S.E. 2d 786, and cases cited. Their contention is that the judgment should be reversed because the trial judge submitted the case to the jury on a theory at variance with the cause of action alleged by

plaintiff. In passing, it is noted that a new trial, rather than a reversal of judgment, would result if there is prejudicial error in the trial judge's instructions to the jury.

The complaint, in paragraph 4, alleges the contract as stated above. However, appellants emphasize the following allegations of paragraph 3: "That said contract was several months in the making and is in part verbal and partially in writing, same being composed of various verbal understandings and agreements, letters, which, taken together, constitute a definite and binding contract between the parties," copies of these writings, marked Exhibits 1-19, both inclusive, being attached to and by reference made a part of the complaint. It is argued that the contract on which the case was tried was the Contractual Agreement bearing date of 14 February, 1953; and that this was a departure or variance from the contract as alleged.

Appellants' position is untenable. The correspondence indicates the relationship of the parties before and after the Contractual Agreement was signed. The correspondence, in some respects, throws light on certain provisions of the Contractual Agreement but does not vary plaintiff's obligations. For example, Brooks' letter of 18 February, 1953, gives the description of the land referred to in Brooks' letter of 5 February, 1953, and in plaintiff's letter of 11 February, 1953. The two letters last mentioned set forth the contract as alleged. True, when Brooks prepared or had prepared the Contractual Agreement he modified the original agreement by inserting a new provision at variance therewith, to wit: "Deeds are to be delivered to payee (sic) at the completion of the final payment." Since the only effect of this modification was to relieve Brooks of his obligation under the original agreement to deliver the deed when plaintiff made the down payment, defendants have no ground for complaint on account thereof. The Contractual Agreement was not signed until April, 1953. However, it appears that Brooks considered the contract as made in February, 1953, for upon that basis he makes the calculation that $220.00 was in arrears in February, 1954. The Contractual Agreement, a copy of which was attached to the complaint and by reference made a part thereof, was the instrument by which they defined formally and finally the terms of their agreement. Correspondence prior thereto, while relevant to identify and describe the land, was superseded by the Contractual Agreement. This appears plainly from the complaint and attached exhibits. Correspondence subsequent thereto was relevant, as bearing upon the defendants' alleged right to declare an abandonment of the contract by plaintiff rather than upon the terms of the contract. The court below correctly considered and tried plaintiff's case on this basis. Indeed,

Brooks testified, referring to the Contractual Agreement: "That is our agreement; that is it."

Appellants contend that the court was in error in instructing the jury that the Contractual Agreement was a contract of sale and purchase, as contended by plaintiff, rather than an option, as contended by defendants. This contention is without merit. By its terms, both parties were bound, one to sell and the other to purchase.

The consideration for an option is executed (paid) when the contract is made. The unilateral obligation arising therefrom binds the prospective seller; but the prospective purchaser may or may not exercise his right to purchase upon the terms stated. If he fails to do so, the only result is the loss of the consideration given *for the option.* In a contract of sale and purchase, bilateral obligations arise, the purchaser's obligation to pay the purchase price and the seller's obligation to sell and convey constituting reciprocal considerations. This distinction has been pointed out in many decisions including *Trogden v. Williams,* 144 N.C. 192, 56 S.E. 865; *Winders v. Kenan,* 161 N.C. 628, 77 S.E. 687. Also, see 55 Am. Jur. 496, Vendor and Purchaser, sec. 29.

Two well-settled rules rest, at least in part, upon the distinction noted above, *viz.:* In the absence of special circumstances, (1) time is of the essence of a mere option to purchase land, *Bateman v. Lumber Co.,* 154 N.C. 248, 70 S.E. 474; *Winders v. Kenan, supra;* and (2) time is not of the essence of a contract of sale and purchase, *Falls v. Carpenter,* 21 N.C. 237; *Davis v. Martin,* 146 N.C. 281, 59 S.E. 700; *Howell v. Pate,* 181 N.C. 117, 106 S.E. 454; *Crawford v. Allen,* 189 N.C. 434, 127 S.E. 521. As stated by *Brown, J.,* in *Davis v. Martin, supra:* "There is a decided distinction between an option to purchase, which may be exercised or not by the prospective purchaser, and an absolute contract of sale, wherein one of the parties agrees to sell and the other to buy certain property, the sale to be completed within an agreed time. In the latter case the mere lapse of time with a contract unperformed does not entitle either party to refuse to complete it, and, therefore, time is not of the essence of the contract; but where the contract is merely an option, generally without consideration, of course time is of the essence."

Plaintiff made the $500.00 down payment. She made additional payments as stated which, although plaintiff was in arrears, were accepted by defendants without objection. The last such payment was plaintiff's check of 14 January, 1954, for $80.00. No word of dissatisfaction was expressed by Brooks prior to his letter of 8 February, 1954. Plaintiff did nothing to indicate any intention on her part to abandon the contract. Both plaintiff and Brooks treated the contract as subsisting. That Brooks so regarded it appears plainly from the following excerpts from his testimony. "The latter part of February, 1954, I wired her

twice and called her over the telephone to get her to give up the property, call off the deal. So I could sell to this other party for cash." Again: "I had accepted a deposit of $800.00 from one party offering to buy the land on a 30-day basis, provided I could clear with my niece Katherine."

*Chief Justice Ruffin*, in *Falls v. Carpenter, supra*, discusses at length the principles of equity applicable in such cases. In that case the purchaser was in arrears, but even so the seller continued to receive and accept from the purchaser payments on account of the balance of purchase price. The seller, for reasons not material here, sold and conveyed the land to another party. The contention that the purchaser's failure to meet payments when due constituted an abandonment by him of the contract was soundly rejected. The conclusion reached is compressed in this sentence: "Having allowed it (the contract) to subsist after the default he (seller) cannot put an end to it by an action which, supposing it to subsist, is in violation of it; but to that end there must be a previous, formal and reasonable notice that if the purchaser does not fulfill it, the other party will not hold himself bound."

In *Scarlett v. Hunter*, 56 N.C. 84; *White v. Butcher*, 59 N.C. 231; *Faw v. Whittington*, 72 N.C. 321, the principles declared by *Chief Justice Ruffin* are approved and applied. In *Scarlett v. Hunter, supra, Pearson, J.* (later *C. J.*), says: "Where there is a contract for the sale of land, the vendee is considered in equity as the owner, and the vendor retains the title as security for the purchase-money. He may rest satisfied with this security as long as he chooses, and when he wants the money he has the same right to compel payment by a bill for specific performance as the vendee has to call for title. The right to have a specific performance is mutual, and when the vendee is let into possession, and continues in possession, as in our case, it is taken for granted that the parties are content to allow matters to remain *in statu quo* until a movement is made by one side or the other. These principles are fully discussed in *Falls v. Carpenter*, 21 N.C. 237, which is decisive of this case."

And in *Faw v. Whittington, supra, Bynum, J.*, says: "Assuming the law to be that a vendee can abandon by matter *in pais* his contract of purchase, it is clear that the acts and conduct constituting such abandonment must be positive, unequivocal and inconsistent with the contract. The mere lapse of time or other delay in asserting his claim, unaccompanied by acts inconsistent with his rights, will not amount to a waiver or abandonment."

It appears that the above principles, as stated by this Court, are in accord with rulings in like cases in other jurisdictions. 49 Am. Jur., 55,

Specific Performance sec. 42; 81 C.J.S. 638, Specific Performance sec. 110; Williston on Contracts, Rev. Ed., sec. 852.

The parties, having recognized the contract as subsisting, notwithstanding the arrears in payments, defendants had no right to treat the contract as abandoned unless plaintiff failed to comply with its strict terms within a reasonable time after definite notice from defendants that they would treat the contract as abandoned unless such strict compliance was made. Such demand and notice are prerequisite to placing the purchaser in default under circumstances such as those that existed here.

It is noted that the Contractual Agreement contains no provision that the entire unpaid balance of purchase price shall become due upon failure of plaintiff to pay when due any one or more of the monthly installments. It is noted further that defendants' attempted renunciation of the contract eliminated any necessity for a tender of the full purchase price if such were otherwise necessary, *Bateman v. Hopkins,* 157 N.C. 470, 73 S.E. 133; *Lennon v. Habit,* 216 N.C. 141, 4 S.E. 2d 339.

Appellants contend that the court in effect gave a peremptory instruction to the jury in plaintiff's favor on the first issue. It does not appear that this was done. However, upon the admitted documentary evidence and Brooks' testimony it would appear that such peremptory instruction would have been appropriate.

Appellants make the further contention that the trial judge predicated his instructions relating to the Contractual Agreement upon the finding by the jury by the greater weight of the evidence "that these parties signed this agreement." They call attention to Brooks' testimony to the effect that he (Brooks) signed it and "signed it for Hazeline." As to Hazeline B. Chambers, a sufficient answer to this contention is that plaintiff testified that Hazeline B. Chambers and Brooks had signed the contract before plaintiff received it. However, for reasons stated below, the failure of Osbia Chambers to sign it and whether Hazeline B. Chambers signed it or Brooks signed her name are immaterial under the circumstances of this case.

In this Court defendants demurred *ore tenus* to the complaint for that it fails to allege facts sufficient to constitute a cause of action. The demurrer is overruled. While each ground assigned has been considered, none of the points raised require further discussion other than those relating to defendants Chambers. In this connection, the demurrer is predicated upon the failure of the complaint to allege that Hazeline B. Chambers executed any power of attorney or other instrument authorizing Brooks to sell her land and upon the failure to allege the execution of the contract of sale by Osbia Chambers.

DOUGLASS *v.* BROOKS.

This action was brought against Brooks and process was served only on him. The defendants Chambers entered the case by voluntary general appearances. They adopted the answer of Brooks, which in turn speaks time after time of "the defendants." The answer is signed by counsel "for Defendants." In his voluntary general appearance, defendant Osbia Chambers "hereby agrees that he will fully comply with any judgment which may be rendered in the action entitled as above." Paragraph 16 of the complaint alleges that defendant Hazeline B. Chambers holds legal title to the land and that she is legally bound by the actions of Brooks. Defendants' answer to paragraph 16 admits in effect that Brooks had authority to execute the contract he made with plaintiff, but defendants characterize such contract as an option rather than as a contract of sale. The Statute of Frauds G.S. 22-2, is not pleaded. In the trial below, defendants Chambers raised no question concerning their obligation to perform whatever agreement Brooks may have made concerning the land. Neither of them testified at the trial. It may be fairly implied that neither was present at the trial. The conclusion is inescapable from a study of the records that the land, as Brooks stated to plaintiff in his letter of 18 February, 1953, belonged to him and he caused the record title to be put in the name of Hazeline B. Chambers for purposes of his own. Although parties, neither Hazeline B. Chambers nor Osbia Chambers has asserted ownership of the land.

Defendants' position in the trial below, as stated in the agreed statement of case on appeal, was as follows:

"The defendants contended that all of said writings and oral statements constituted an option to purchase the realty involved in which time was the essence of the agreement and failure to pay promptly forfeited all of the plaintiff's rights and that defendant (*sic*) breached said contract and thereby lost all of her rights."

No error prejudicial to defendants has been made to appear. Indeed, under the undisputed evidence, the result could hardly have been otherwise.

No error.

BARNHILL, C. J., took no part in the consideration or decision of this case.