Evergreens, Inc. v. Linen Service, Inc.

THE EVERGREENS, INC., a/k/a EVERGREENS NURSING HOME v. GENERAL LINEN SERVICE, INC. AND RALEIGH LINEN SERVICE, INC.

No. 7418SC1066

(Filed 16 April 1975)

Contracts § 12— linen service — option for resale of linens — no obligation to resell

Where plaintiff and one defendant entered into a contract whereby defendant was to provide linen service for plaintiff, plaintiff was to sell the linens it owned to defendant, and plaintiff was to buy back all linen sold if the contract was terminated, such contract imposed no obligation on the other defendant, who had bought the first defendant's business, to sell linen to plaintiff, since the provision in question was included in the contract at the insistence of the first defendant, and the effect of the provision was to provide defendant with the option of requiring plaintiff to repurchase certain linens.

APPEAL by plaintiff from *Crissman, Judge*. Judgment entered 17 October 1974 in Superior Court, GUILFORD County. Heard in the Court of Appeals 11 March 1975.

This action was instituted to recover monetary damages for breach of contract and was heard by the court without a jury. The undisputed evidence, together with admissions in the pleadings, and stipulations, tended to show:

Prior to 29 July 1972, plaintiff owned the linens used in the operation of its nursing home. On that date it entered into a contract with defendant General Linen Service, Inc., (General) whereby General would furnish linen service to plaintiff at an agreed price. Paragraph 5 of the contract contained the following provision (General being referred to as the company and plaintiff as the customer) :

. . . The company agrees to purchase from the customer all usable linens at fifty percent (50%) of invoice price, and new linens at one hundred percent (100%) of invoice price. The company agrees to deduct from the customer's bill at the end of the first month fifty percent (50%) of the cost of linens, and fifty percent (50%) at the end of the second month's bill. *If this contract is terminated by either the the customer of [sic] the company the customer will buy back all linen purchased from them on the same basis that the company bought from the customer*. . . . (Emphasis added.)

Subsequent to the execution of the contract, plaintiff delivered to General a considerable inventory of sheets, pillowcases and other "linens". On 1 August 1972, defendant Raleigh Linen Service, Inc., (Raleigh Linen) purchased the assets of General and assumed its obligations. At the instance of plaintiff, the contract was terminated as of 8 July 1973.

Thereafter, plaintiff demanded that defendant Raleigh Linen resell to plaintiff a quantity of linen equal to that plaintiff sold to General and on the same price basis. Plaintiff based its demand on the provisions of Paragraph 5 of the contract quoted (with emphasis) above. Raleigh Linen rejected the demand and plaintiff proceeded to purchase the linens on the open market. Plaintiff contends it was damaged $5,559.75 by the breach of contract.

At trial, C. J. Blanchard, Jr., an employee of plaintiff, testified in pertinent part as follows:

As to what was the purpose of our selling the linens to General Linen Service, this is sort of a routine type of thing. When you go from owning your linens to going to a a rental type of agreement, the nursing home or hospital or whatever type of facility it is that has these things inventoried and there is no purpose in them sitting there in the inventory, nor being used, so it's a routine type of thing, this type of provision in the contract. *At the time we were negotiating the contract, Mr. Henry Reece, the gentleman that signed the contract on behalf of the previous company, wanted to insure that they would not be stuck with linens that they could not use at the end of the contract and it was at his insistence that this was in, this repurchase clause was put in.* (Emphasis ours.)

At the conclusion of the evidence the court made findings of fact and concluded that the agreement between plaintiff and General imposed no duty upon defendants to sell linens to plaintiff. From the entry of judgment dismissing its action, plaintiff appealed.

*Younce, Wall and Suggs, by Robert V. Suggs and Peter F. Chastain, for plaintiff appellant.*

*Smith, Anderson, Blount & Mitchell, by Michael E. Weddington, for defendant appellee.*

BRITT, Judge.

Plaintiff contends that the trial court erred in concluding as a matter of law that the agreement between plaintiff and defendant General imposed no duty upon the defendants to sell certain linens to the plaintiff. We agree with the trial court.

In *Lane v. Scarborough*, 284 N.C. 407, 409-10, 200 S.E. 2d 622 (1973), we find:

> . . . Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution. (Citations.)

> "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time. (Citation.) . . . "

In the case at bar, the language in the contract is that the " . . . customer (plaintiff) will buy back all linen purchased. . . . " There is no language in the contract imposing a duty on the company (defendants) to sell the linen back to the customer. Plaintiff's employee, as its witness, explained that the provision in question was included in the contract at the insistence of defendant General. The effect of the provision was to provide General with the *option* of requiring plaintiff to repurchase certain linens.

In 1A Corbin, Contracts § 266, at 544-46 (1963), we find:

> It is very common, in contracts for the purchase and sale of corporate shares or other property, for the purchaser to be given an option to sell it back to the seller or for the seller to be given an option to buy it back from the purchaser. Where the option is to sell back, consideration for the seller's promise to repurchase at the buyer's option is the price paid by the buyer; that price is the agreed exchange for two things—the property transferred and the power to accept the standing offer of the seller. . . .

See 1 Williston, Contracts §§ 61A-D (Jaeger ed. 1957).

In *Trogden v. Williams*, 144 N.C. 192, 199, 56 S.E. 865 (1907), in defining "option", the court said:

> . . . The term is well defined in the case of *Black v. Maddox*, 104 Ga., 157, as "the obligation by which one binds himself

to sell [or buy] and leaves it discretionary with the other party to buy [or sell], which is simply a contract by which the owner of property agrees with another person that he shall have the right to buy [or sell] the property at a fixed price within a certain time." The agreement is, of course, invalid unless supported by a valuable consideration. . . .

*Accord, Douglass v. Brooks,* 242 N.C. 178, 87 S.E. 2d 258 (1955); *Winders v. Kenan,* 161 N.C. 628, 77 S.E. 687 (1913); *Rogers v. Burr,* 105 Ga. 432, 31 S.E. 438 (1898).

We conclude that the contract imposed no obligation on defendants to sell linen to plaintiff.

In their other assignment of error, plaintiff contends the trial judge erred in finding as a fact that linens sold to defendants were not physically in existence at the time plaintiff requested defendant to sell certain linens. Assuming that the court did err, in view of our conclusion above stated, plaintiff is not prejudiced by the finding.

Affirmed.

Judges MORRIS and ARNOLD concur.