## ALSTON v. CONNELL.

(Filed March 6, 1906).

*Specific  Performance—Contracts—Options—Extension  of Time—Statute of Frauds—Estoppel—Pleadings.*

1. A paper writing, by which the defendant binds himself at any time previous to a fixed date, to sell a certain tract of land to anyone whom the plaintiff may direct for a designated sum, is a unilateral contract or an option, where the plaintiff has never obligated himself to pay said sum.

2. In an action to compel specific performance of an option on land, where it appears that the plaintiff was arranging to raise the money within the time required by the option, when he was requested by the defendant that a postponement was desired for a year and the plaintiff agreed to the proposition and within the time fixed by the postponement, went to the defendant and tendered the amount and the same was refused, *held*, the defendant is estopped from pleading the statute of frauds or from denying his obligation and the plaintiff is entitled to specific performance.

3. An owner of land, who would insist upon strict performance by a prospective purchaser as a condition precedent to an action by the latter for the specific performance of an option to purchase, must not himself be the cause of the breach.

4. Where all the facts which go to make out an estoppel are set out in the pleadings, the estoppel is sufficiently pleaded, though it is not claimed as an estoppel in terms.

ACTION by P. G. Alston and others against W. A. Cornell and others, heard by *Judge E. B. Jones* and a jury, at the September Term, 1905, of the Superior Court of WARREN.

The facts pertinent to an understanding of the case, admitted and established by the verdict, are, as follows:

Prior to March 7, 1892, Mrs. Ruina Alston, having become indebted to Thomas Connell in the sum of $2,440, executed a mortgage to him to secure said indebtedness on her plantation known as "Tusculum," containing about 600 acres. Being unable to pay, on March 7, 1892, she conveyed the property to her son, R. W. Alston, for $500, to be paid to herself and the assumption by R. W. Alston of the indebtedness to Thomas Connell. This was assented to by Thomas Connell, and thereupon R. W. Alston, grantee in the deed, executed a mortgage in the form of a deed of trust to Thomas Connell, Jr., to secure the debt due to his father, Thomas Connell. After the execution of this deed of trust, to-wit, on April 17, 1897, R. W. Alston, finding he could not pay this debt, conveyed the property, charged with this indebtedness, to Mrs. B. C. Alston, wife of his brother, P. G. Alston. The grantee undertook to pay off the indebtedness—Thomas Connell, the creditor, assenting to the arrangement—and thereupon the grantee, her husband, P. G. Alston, and Thomas Connell entered into a contract as follows: "This agreement made and entered into this 17 day of April, 1897, between P. G. Alston and wife, Bettie Alston, of Franklin County, N. C., parties of the first part, and Thomas Connell, of Warren County, N. C., witnesseth: 1. That the parties of the first part have this day put said Connell in possession of Mrs. R. T. Alston's 600 acre home place in Fishing Creek Township in Warren County, the same being the tract of land which said Connell now holds a deed of trust mortgage against, which was made by R. W. Alston and wife, Pattie, and they being unable to repair the dwelling house, pay insurance and taxes, build tenant houses, etc., they hereby agreed that said Connell proceed to re-roof the back wing of dwelling and repair windows and have dwelling insured in favor of said Connell to further secure the interest of the

amount due him on said land, interest, unpaid taxes and aforesaid house repairs, insurance fees, etc. 2. That said Connell's term of possession begins April 20, 1897, and ends January 1, 1901, in which time he shall have full landlord's power as renting and collecting, and that he shall pay all rents coming into his hands on the above mentioned claim which he holds against said estate, at the time he receives said rents. It is further understood that the rents of 1897 are all or nearly all spent by P. G. Alston prior to Connell's becoming landlord. 3. That parties of the first part agree to build and fully complete the two double tenant houses with rock or brick chimneys by December 1, 1897. But should they fail to do so, they hereby empower said Connell to build them and charge the estate with the amount they cost to complete. Parties of the first part do further agree that on or before January 1, 1898, they will reduce the whole amount of indebtedness due to said Connell to $2,500. 4. That should said P. G. Alston and Bettie Alston fail to fully comply as agreed, then they hereby authorize said Thomas Connell, without further objection or complaint, to have said land and premises sold under the trust deed securing said indebtedness on said land and premises, at any time said Connell sees proper to do so. By which said Connell is hereby authorized. Witness our hands and seals this 20 April, 1897. P. G. Alston, Jr. (Seal.)  B. C. Alston. (Seal.)"

In pursuance of this agreement Thomas Connell entered into possession of the property and lived there under the agreement till December 1, 1898, when, under an allegation that default had been made in the conditions of the above agreement, he caused the trustee to advertise the property for sale, and on the day of sale, December 5, 1898, agreed with P. G. Alston that if the sale were allowed to proceed he would buy in the land, take title thereto and convey to P. G. Alston on the payment to him of $3,502, the amount of the mortgage debt and interest and including, in addition thereto,

$250 for repairs on the place. Thereupon the sale took place and Thomas Connell bought in the farm of 600 acres for $2,000, took a deed therefor from Thomas Connell, Jr., the trustee, and entered into possession of the property.

After this agreement and sale, permitted to proceed by reason thereof, the parties drew up a paper writing, and Thomas Connell, in pursuance of this arrangement, executed and delivered to P. G. Alston a paper writing as follows: "This is to certify that I, Thomas Connell, did on this the 5 day of December, 1898, purchase the 600 acre tract known as the 'Tusculum farm,' and doth thereby bind himself, heirs and assigns, at any time previous to December 1, 1899, to sell the same to whom P. G. Alston may direct for $3,502. Witness, etc. Thomas Connell. (Seal.) Two hundred and fifty dollars of which is for improvements for 1899, which, if not used, or any part thereof, is to be returned to the said P. G. Alston. (Signed) Thomas Connell."

Prior to the time limited in this contract P. G. Alston had arranged or was arranging to procure and pay the sum stipulated, when the defendant, Thomas Connell, requested that the time for payment of the same be extended to January 1, 1901. This was assented to by P. G. Alston, and before the time fixed, the plaintiff, having the amount of money in hand, went to Thomas Connell and offered him the full amont due. This was refused. Thomas Connell afterwards died and P. G. Alston instituted this action to enforce the obligation of the contract against his heirs and personal representatives on the facts here stated.

Pending the action, B. C. Alston, wife of P. G. Alston, having died, her children and heirs at law were made parties plaintiff and adopted the complaint already filed. There was an answer admitting some and denying other allegations of the complaint, and on issue joined there was a verdict as follows:

1. Was Ruina T. Alston prior to March 7, 1892, the owner

of the land in controversy, and did she convey the same to R. W. Alston, as alleged in the complaint? Yes. 2. Did R. W. Alston and wife on March 7, 1892, execute to Thomas Connell, Jr., the deed of trust mentioned in paragraph 5 of the complaint? Yes. 3. Did the plaintiffs and those under whom they claim acquire the equity of redemption of R. W. Alston and wife for consideration prior to the sale made by the trustee, as alleged in the complaint? Yes. 4. Did Thomas Connell, Sr., buy in the land in controversy at the sale made by the trustee on December 5, 1898, in pursuance of an arrangement entered into with P. G. Alston, Jr., before the sale, agreeably to the terms of the instrument set out in the complaint and referred to in the evidence as Exhibit A? Yes. 5. Did P. G. Alston, Jr., prior to December 1, 1899, offer to pay to Thomas Connell the said $3,502 in accordance with the terms of said contract and agreement? 6. Was there any written renewal or extension of said paper writing before December 1, 1899? No. 7. Did Thomas Connell, at his own request prior to December 1, 1899, verbally extend the time for the payment of the $3,502 to January 1, 1901? Yes. 8. If said time was extended to January 1, 1901, verbally by Thomas Connell, was there any consideration for it? Yes. 9. Did P. G. Alston, being ready and able to do so, on the 31st day of December, 1900, offer to pay to Thomas Connell, Sr., the sum of $3,502, and did said Connell refuse to accept the same? Yes.

Upon the verdict, there was judgment for the plaintiffs and the defendants excepted and appealed.

*F. S. Spruill* and *T. W. Bickett* for the plaintiffs.
*Walter A. Montgomery* and *T. T. Hicks* for the defendants.

HOKE, J., after stating the case: The heirs at law and personal representatives of B. C. Alston, wife of P. G. Alston, the original plaintiff, having been made parties plaintiff, it may

be that on the facts set out in the complaint and indicated in the testimony, that these heirs might successfully assert a right to redeem the property, either on the idea ,of a parol ·trust or more simply by holding that under all the facts and circumstances suggested, the relationship of mortgagor and mortgagee had never terminated between them and Thomas Connell, the ancestor of the defendants, and under whom they claim.  This position, however, is not open to the plaintiffs in the present condition of the record, for the reason that the suit was originally instituted by P. G. Alston, and complaint filed, seeking to enforce his rights under his written agreement of date December 5, 1898, and under which Thomas Connell obligates himself to convey the· property. The heirs at law of B. C. Alston make themselves parties plaintiff and seek the same relief, and while the pleadings set forth the entire facts and some evidence is offered tending to sustain a claim in behalf of these heirs, the issues framed and passed upon are not decisive of those rights, but are addressed to the question of this written agreement and the facts especially bearing thereon, and are only determinative of the interest arising thereunder.  The rights of the parties therefore are considered as they may arise upon this written paper and the issues determined in reference to the same.

On that question the court is of opinion that this paper amounts· only to an option by which Thomas Connell, on December 5, 1898, bound himself to P. G. Alston to convey the 600 acre Tusculum farm on the payment to him of ·$3,502 at any time previous to December 1, 1899.  P. G. Alston had never taken the place of debtor to Thomas Connell, and neither in this nor any other paper, so far as we can discover, has P. G. Alston ever obligated himself to pay this or any other sum.  There is consideration for the agreement in permitting Thomas Connell to proceed with the sale and buy the property at $2,000, in apparent violation of the agreement between himself and P. G. and Betty Alston, and

other considerations might be suggested; but P. G. Alston, not having provided to pay, we agree with the defendants, that this was a unilateral contract, commonly called "an option," a proposition to sell, binding and irrevocable by the owner till the stipulated time expired, but in which, time was of the essence under ordinary circumstances, and in cases like the present, requiring payment of the price as a condition precedent. 21 Am. & Eng. Enc. (2 Ed.), 931, and authorities cited. We do not conclude, however, with the defendants that the plaintiffs are barred of relief by reason of the statute of frauds; for, if it be conceded that this statute under ordinary conditions would avail the defendants, the court is of opinion that on this paper and the facts established by the verdict the defendants are estopped from pleading the statute and from denying their obligation under the contract on that ground.

These facts, so established, declare that the plaintiff had arranged or was arranging to raise the money within the time required by the option, when he was notified and requested by the defendant that a postponement was desired for a year, till January 1, 1901, and the plaintiff agreed to the proposition. Within the time fixed by the postponement, the plaintiff went to the defendant with the money, tendering the amount required by the agreement and the same was refused. The plaintiff, having consented to the delay at the request of Thomas Connell, will be taken to have been ready and willing to perform at the time stipulated in the written agreement; having tendered the amount due within the period fixed by the postponement, he is in no default, and the extension having been given at Thomas Connell's request and for his convenience, when the extended agreement itself and all the circumstances clearly implied that he regarded it as a valid and binding contract and that he intended to live up to its terms, the law will not permit him now to repudiate its obligations, invoke for his protection the statute of frauds

and defeat the plaintiff's recovery, who has forborne a timely performance by reason of Thomas Connell's request and in reasonable reliance on his assurance.

This position is in accord with sound principles of justice and is well sustained by authority. In *Hickman v. Haines,* Law Reports, 10 C. P., at p. 603, it is said: "The proposition that one party to a contract should thus discharge himself from his own obligations by inducing the other party to give him time for their performance is to say the least very startling, and if well founded will enable the defendants in this case to make use of the statute of frauds, not to prevent a fraud upon themselves, but to commit a fraud upon the plaintiff. It need hardly be said that there must be some very plain enactment or strong authority to force the court to countenance such a doctrine." Again, at page 605: "The result of these cases appears to be that neither a plaintiff nor a defendant can at law avail himself of a parol agreement to vary or enlarge the time for performing a contract previously entered into in writing, and required so to do by the Statute of Frauds. But, so far as this principle has any application to the present case, it appears to us rather to preclude the defendants from setting up an agreement to enlarge the time for delivery in answer to the plaintiff's demand, than to prevent the plaintiff from suing on the original contract for a breach of it." And at page 607: "In conclusion we think that, although the plaintiff assented to the defendant's request not to deliver the 25 tons of iron in question in June, he was in truth ready and willing then to deliver them, and that the defendants are at all events estopped from averring the contrary."

In *Clarno v. Greyson,* 30 Oregon, 111, it is said: "That an owner of land, who would insist upon strict performance by a prospective purchaser as a condition precedent to an action by the latter for the specific performance of an option to purchase, must not himself be the cause of the breach;" and in the opinion of the court by *Wolverton, J.,* at p. 127, it is said:

"Another proposition insisted upon, which is sound in law and based on good morals, is that he who would insist on strict performance must himself not be the cause of the breach. His own wrong can never operate under the sanction of law to his advantage. This may be regarded as fundamental and no authorities are necessary to support it."

In *Barton v. Gray,* 57 Mich., 630, it is held that "The defense urged is not open to defendant for another reason: 'No person can be heard to complain of an injury caused by the act or conduct of a party to which he has consented, and no one who causes or sanctions the breach of an agreement can recover damages for its non-performance or interpose it as a defense to an action upon the contract.' "

In *Thompson v. Poor,* 147 N. Y., at p. 409, *Andrews, J.,* says: "It makes no difference, as we contend, what the character of the original contract may be—whether one within or without the statute of frauds—the rule is well understood that if there is forbearance at the request of a party, the latter is precluded from insisting on a performance at the time originally fixed by the contract as a period for action."

The case of *Sheridan v. Nation,* 159 Mo., 54, is very similar in principle to the one before us, and the opinion also finds support in *Swain v. Seamans,* 76 U. S., 254. A line of cases in our State in reference to renewing a contract obligation, barred by the statute of limitations, has strong analogy to the decision we now make. The statute provides that such an obligation can only be renewed by a writing signed by the party charged. In *Haymore v. Commissioners,* 85 N. C., 268, it is held that "The defendants will not be allowed to set up the statute of limitations in bar of the plaintiff's claim, when the delay, which would otherwise give operation to the statute, has been induced by the request of the defendants expressing or implying their engagement not to plead it." There are many other authorities with us to like effect.

We hold that on principle and authority, the defendants are estopped from pleading the statute of frauds in this case or from denying their obligation under the contract, and the plaintiffs are entitled to the decree and specific performance as prayed for in the complaint.

It has been suggested that the estoppel is not pleaded, but this suggestion is without force. There is some doubt if a plaintiff is required to plead an estoppel in order to avail himself of it except in reply to a counterclaim. *Stancill v. James,* 126 N. C., 190. But the more complete answer is that all the facts which go to make out the estoppel are set out. Everything does appear in the pleading which goes to make out this position except simply claiming it as an estoppel in terms, and this is not of the substance.

There is no reversible error in the record and the judgment below is

Affirmed.


CLARK, C. J., did not sit on the hearing of this appeal.