J. N. JOHNSON, JR., v. I. B. NOLES AND WIFE, VARA E. NOLES.

(Filed 18 October, 1944.)

**1. Contracts § 12—**

The effect of a waiver is to release one of the parties from the terms of the original proposition and substitute for it other terms. If this be done by language, the terms of the new proposition are to be ascertained by the words used; if by conduct the law gives to such conduct a construction which secures a fair and just result.

**2. Contracts § 18: Specific Performance § 3—**

An extension of the time for tender of the balance of the purchase price of land and for the acceptance of the deed by plaintiff, given by defendants, not for the benefit and accommodation of the plaintiff, but in order that defendants may give a good deed with full covenants and warranty, which defendants could not then do, is valid and binding on the parties though not in writing and without additional consideration.

**3. Frauds, Statute of, § 1—**

A suitor will not be permitted to make use of the statute of frauds, not to prevent a fraud upon himself, but to commit a fraud upon his adversary.

**4. Specific Performance § 3: Contracts § 16—**

He, who would insist on strict performance of a contract, must not himself be the cause of the breach.

**5. Specific Performance § 4: Contracts § 16—**

Where one party to an option to purchase land is ready, able and willing and offers to perform his part and the other party refuses to comply with the terms thereof, tender of the balance of the purchase price and demand for a deed are unnecessary.

**6. Specific Performance § 4—**

  Issues approved in a suit for specific performance of a contract to convey land.

APPEAL by defendants from *Bone, J.,* at March Term, 1944, of JOHNSTON.

This is an action for specific performance. The defendants, on 23 September, 1943, gave the plaintiff and his heirs and assigns an option to purchase a certain tract of land described therein and owned by the defendants, for the sum of $6,000.00  One thousand dollars to apply on the purchase price was paid at the time of the execution and delivery of the option. Upon the payment of an additional sum of $5,000.00, on or before 9 October, 1943, the defendants bound themselves to deliver to J. N. Johnson, Jr., or his heirs and assigns, at his or their request, a good and sufficient deed with full covenants and warranty, for said land. The defendants met J. N. Johnson, Sr., father of the plaintiff, in the office of I. R. Williams, attorney at law, in the town of Dunn, on 9 October, 1943, for the purpose of complying with the terms of the option. It is alleged, and J. N. Johnson, Sr., testified, that the plaintiff, through him as his agent, was ready, able and willing to pay the balance of the purchase price on 9 October, 1943, and that he so advised the defendants. However, Mr. Williams, who had been employed by J. N. Johnson, Sr., to investigate the title to the property, informed the defendants that there were certain defects in the title and it would require several days to clear them up. It was pointed out that a certain dower interest was outstanding and it would be necessary to obtain a deed releasing this dower interest, and further that no final judgment had been entered in a certain special proceedings which also affected the title. Whereupon, Mr. Williams suggested that the matter be continued for a few days to give him time to clear the title. J. N. Johnson, Sr., suggested that it be continued until 15 October, 1943, and that they meet in the town of Benson on that date. The testimony for the plaintiff is to the effect that Mr. Noles agreed to the extension of time in order that he might give a good deed, and agreed to meet Messrs. Johnson and Williams in Benson, 15 October, 1943, at 3:00 p.m., to close the transaction; that he stated he did not want to give a bad deed and requested Mr. Williams "to clear up the title for him as he knew more about it than anyone else and for him to go ahead." The defendants do not deny the defects in the title, nor the request for additional time in which to cure them, but they do deny they verbally extended the option to 15 October, 1943. However, at the time and place suggested for the meeting on 15 October, 1943, Mr. Noles appeared and stated "I have decided to back out; I will not trade." Whereupon, I. R. Williams tendered in cash to

defendants the balance of the purchase price, and demanded deed to J. N. Johnson, Sr., and his wife Vara Wood Johnson. The defendants declined to accept the balance of the purchase money and refused to execute a deed for the land.

Plaintiff alleges and testified that after obtaining the original option, his father, J. N. Johnson, Sr., was his agent and was acting for him in the tender of the balance of the purchase price and in demanding a deed to the premises.

Issues were submitted to and answered by the jury, as follows:

"1. Did the defendants execute and deliver to the plaintiff the option in writing as described in the complaint? Answer: Yes.

"2. Was the plaintiff ready, able and willing to pay the balance of $5,000.00 and take said deed according to the terms and conditions of said option on 9 October, 1943? Answer: Yes.

"3. Were the defendants able, ready and willing to comply with the terms of said option and deliver a good and sufficient warranty deed with full covenants and warranty on or before 9 October, 1943, according to the terms set out in the option? Answer: No.

"4. Did the defendants consent and agree with the plaintiff to extend the time for the performance of said contract from 9 October, 1943, to 15 October, 1943, in order that certain defects in the defendants' title to said lands might be corrected, as alleged in the complaint? Answer: Yes.

"5. Did the plaintiff on 15 October, 1943, tender to the defendants the payment of $5,000.00 and demand deed for the land in question? Answer: Yes.

"6. Did the defendants violate the terms of said option and refuse to deliver to the plaintiff a deed conveying said lands according to the terms of their contract as alleged in the complaint? Answer: Yes."

Accordingly, a decree for specific performance was entered, and from which the defendants appeal to the Supreme Court, assigning errors.

*Wellons, Martin & Wellons for plaintiff.*
*Ezra Parker and J. R. Barefoot for defendants.*

DENNY, J. The first and second assignments of error are directed to the refusal of his Honor to allow the defendants' motion for judgment of nonsuit, made at the close of plaintiff's evidence and renewed at the close of all the evidence.

The defendants contend that the option was a unilateral contract, and in order for the plaintiff to avail himself of the benefits thereof he was required to comply unconditionally with the terms of the option. There-

fore, they insist that it was not enough for the plaintiff to be ready, able and willing to pay the balance of $5,000.00 and take a deed, according to the terms of the option, on 9 October, 1943, but the actual tender and demand for a deed was the only means of acceptance that could bind the defendants, and, in support of their position, they are relying on *Trogden v. Williams,* 144 N. C., 192, 56 S. E., 868, and *Hardy v. Ward,* 150 N. C., 385, 64 S. E., 171. In both of the above cases, however, it will be noted that the plaintiffs attached conditions not embraced within the terms of the respective options, instead of accepting and complying with them according to their terms. Furthermore, both cases hold a tender unnecessary if waived. In *Trogden v. Williams, supra,* the Court said: "The effect of a waiver is to release one of the parties from the terms of the original proposition and substitute for it other terms. If this be done by language, the terms of the new proposition are to be ascertained by the words used; if by conduct the law gives to such conduct a construction which secures a fair and just result."

An extension of the time for tender of the balance of the purchase price, and for the acceptance of the deed by plaintiff, was given by the defendants, according to the plaintiff's allegations and testimony, not for the benefit or accommodation of the plaintiff, but in order that the defendants might give a good deed with full covenants and warranty, which they could not do on 9 October, 1943. Even so, the defendants contend, if these allegations are conceded to be true, the extension was in parol, without consideration, and void, citing *Cummins v. Beaver,* 103 Va., 230, 48 S. E., 891. The facts and circumstances as shown upon this record do not sustain the position taken by the defendants.

The principle laid down in *Alston v. Connell,* 140 N. C., 485, 53 S. E., 292, is controlling in the instant case. There the plaintiff had arranged, or was arranging, to raise the necessary funds in order to comply with the terms of the option, when he was notified and requested by the defendant that a postponement was desired for a year and the plaintiff agreed to the extension. Within the time fixed in the parol extension, the plaintiff tendered to the defendant the money required by the written agreement and the same was refused. We quote at some length from the able and exhaustive opinion of *Hoke, J.,* speaking for the Court: "The plaintiff, having consented to the delay at the request of Thomas Connell, will be taken to have been ready and willing to perform at the time stipulated in the written agreement; having tendered the amount due within the period fixed by the postponement, he is in no default, and the extension having been given at Thomas Connell's request and for his convenience, when the extended agreement itself and all the circumstances clearly implied that he regarded it as a valid and binding con-

tract and that he intended to live up to its terms, the law will not permit him now to repudiate its obligations, invoke for his protection the statute of frauds and defeat the plaintiff's recovery, who has forborne a timely performance by reason of Thomas Connell's request and in reasonable reliance on his assurance. This position is in accord with sound principles of justice and is well sustained by authority. In *Hickman v. Haines,* Law Reports, 10 C. P., at p. 603, it is said: 'The proposition that one party to a contract should thus discharge himself from his own obligations by inducing the other party to give him time for their performance is to say the least very startling, and if well founded will enable the defendants in this case to make use of the statute of frauds, not to prevent a fraud upon themselves, but to commit a fraud upon the plaintiff. It need hardly be said that there must be some very plain enactment or strong authority to force the court to countenance such a doctrine.' . . . In *Clarno v. Greyson,* 30 Oregon, 111, it is said: 'That an owner of land, who would insist upon strict performance by a prospective purchaser as a condition precedent to an action by the latter for the specific performance of an option to purchase, must not himself be the cause of the breach;' and in the opinion of the Court by *Wolverton, J.,* at p. 127, it is said: 'Another proposition insisted upon, which is sound in law and based on good morals, is that he who would insist on strict performance must himself not be the cause of the breach. His own wrong can never operate under the sanction of law to his advantage. This may be regarded as fundamental and no authorities are necessary to support it.' In *Barton v. Gray,* 57 Mich., 630, it is held that: 'The defense urged is not open to defendant for another reason: "No person can be heard to complain of an injury caused by the act or conduct of a party to which he has consented, and no one who causes or sanctions the breach of an agreement can recover damages for its nonperformance or interpose it as a defense to an action upon the contract." ' In *Thompson v. Poor,* 147 N. Y., at p. 409, *Andrews, J.,* says: 'It makes no difference, as we contend, what the character of the original contract may be— whether one within or without the statute of frauds—the rule is well understood that if there is forbearance at the request of a party, the latter is precluded from insisting on a performance at the time originally fixed by the contract as a period for action.' " *Dixson v. Realty Co.,* 204 N. C., 521, 168 S. E., 827; *S. c.,* 209 N. C., 354, 183 S. E., 382. We think his Honor properly submitted the case to the jury.

Other assignments of error are directed to the insufficiency of the issues submitted by the Court, to the charge bearing on the questions of tender on 9 October, 1943, and the variance of the terms of the option by J. N. Johnson, Sr., in demanding a deed not to J. N. Johnson, Jr.,

the plaintiff, but a deed to himself and wife. We think the issues submitted to the jury cover all the pertinent questions raised by the pleadings which are necessary to a proper adjudication of this controversy. *Bailey v. Hassell,* 184 N. C., 450, 115 S. E., 166. The jury found the defendants did consent and agree with plaintiff to extend the time for the performance of the contract, from 9 October, 1943, to 15 October, 1943, in order that certain defects in defendants' title to said land might be corrected. This finding is supported by the evidence. Therefore, the tender of the balance of the purchase price, on 15 October, 1943, was a compliance with the terms of the option. *Alston v. Connell, supra.*

We need not consider whether the request for a deed to J. N. Johnson, Sr., and his wife Vara Wood Johnson, was a variance of the terms of' the option or not, since the evidence discloses that before the tender was made on 15 October, 1943, and a deed requested, the defendant I. B. Noles announced his refusal to comply with the terms of the option. Thereafter, the tender of the balance of the purchase price and a demand for the deed was unnecessary. It is enough that plaintiff is ready, able and willing and offers to perform in his pleading. *Bateman v. Hopkins,* 157 N. C., 470, 73 S. E., 133; *Ward v. Albertson,* 165 N. C., 218, 81 S. E., 168; *Headman v. Commissioners,* 177 N. C., 261, 98 S. E., 776. The defendants did not bottom their refusal to comply with the terms of the option on the fact that the deed was not to be executed to the plaintiff, and that he had made no written assignment of the option; in fact, there is no evidence that the defendants ever read the deed or knew its contents. They decided not to trade. There was a consideration of one thousand dollars paid for the option, and the offer to sell could not be withdrawn until the expiration of the time fixed therein, including the time agreed upon by any extension thereof. *Winders v. Kenan,* 161 N. C., 628, 77 S. E., 687.

A careful consideration of all the exceptions and assignments of error, leads us to the conclusion that in the trial below there was no prejudicial error.

No error.