Hyosung USA, Inc. v. Travelers Prop. Cas. Co. of Am., 2021 NCBC 16.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

HYOSUNG USA, INC.,

      Plaintiff,

v.

TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA; HARTFORD FIRE
INSURANCE COMPANY; and USI
INSURANCE SERVICES, LLC,

      Defendants,

and

LOGIPIA USA, INC.,

      Defendant and
      Third-Party
      Plaintiff,

v.

DUKE REALTY LIMITED
PARTNERSHIP,

      Third-Party
      Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 23974

**ORDER AND OPINION ON THIRD-PARTY DEFENDANT DUKE REALTY LIMITED PARTNERSHIP'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PLAINTIFF'S CLAIM AGAINST DEFENDANT AND THIRD-PARTY PLAINTIFF LOGIPIA USA, INC., REQUIRE ARBITRATION BETWEEN PLAINTIFF AND LOGIPIA USA, INC., SEVER THIRD-PARTY CLAIMS, AND TRANSFER JURISDICTION OVER THE THIRD-PARTY CLAIMS TO GEORGIA**

1. **THIS MATTER** is before the Court on Third-Party Defendant Duke Realty Limited Partnership's ("Duke Realty") Motion to Dismiss or, in the Alternative, to Stay Plaintiff's Claim Against Defendant and Third-Party Plaintiff Logipia USA, Inc. ("Logipia"), Require Arbitration between Plaintiff and Logipia, Sever Third-Party Claims, and Transfer Jurisdiction over the Third-Party Claims to Georgia (the "Motion" or the "Motion to Dismiss") filed on October 26, 2020. (ECF No. 65.)

2.     Plaintiff Hyosung USA, Inc. ("Hyosung") brings this action against (i) its insurers, Defendants Travelers Property Casualty Company of America ("Travelers") and Hartford Fire Insurance Company ("Hartford"), (ii) its insurance broker, USI Insurance Services, LLC ("USI"), and (iii) its warehouse services provider, Logipia, seeking insurance coverage, reimbursement, and damages for Hyosung's losses relating to storm and repair damage to certain Hyosung products Logipia stored for Hyosung at Duke Realty's warehouse in Savannah, Georgia.  In defense, Logipia has brought third-party claims against Duke Realty, and, in response to those claims, Duke Realty now moves to dismiss Logipia's third-party claims against it, or, in the alternative, to stay Hyosung's claims against Logipia, compel those claims to arbitration, sever Logipia's third-party claims against Duke Realty, and transfer those third-party claims to Georgia.

3.     Having considered the Motion, the related briefing, the arguments of counsel at the hearing on the Motion, and other appropriate matters of record, the Court hereby **DENIES** the Motion and **DENIES** Duke Realty's alternative request for relief.

> *Bray & Long, PLLC, by Jeffrey A. Long, and Thompson Hine LLP, by Christopher M. Bechhold, for Plaintiff Hyosung USA, Inc.*
>
> *Hedrick Gardner Kincheloe & Garofalo LLP, by David L. Levy and Kristy M. D'Ambrosio, for Defendant and Third-Party Plaintiff Logipia USA, Inc.*
>
> *Parker Poe Adams & Bernstein LLP, by John C. Amabile, Eric A. Frick, and A. Todd Sprinkle, for Third-Party Defendant Duke Realty Limited Partnership.*

*Womble Bond Dickinson (US) LLP, by James A. Dean, and Niles, Barton & Wilmer, LLP, by Bryant Green and Craig D. Roswell, for Defendant Travelers Property Casualty Company of America.*

*Butler Weihmuller Katz Craig LLP, by Andrew L. Watson and Eric R. Noble, for Defendant Hartford Insurance Company.*

*Bradley Arant Boult Cummings LLP, by Christopher C. Lam and Dexter Hobbs, and Saul Ewing Arnstein & Lehr, LLP, by Kyra Smerkanich and Edward Baines, for Defendant USI Insurance Services, LLC.*

Bledsoe, Chief Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

4. The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). Rather, the Court recites only those facts alleged or admitted in Logipia's Third-Party Complaint relevant to the Court's determination of the Motion.

5. On February 6, 2018, Logipia,[1] as "Tenant," and Duke Realty,[2] as "Landlord," entered into a lease agreement (the "Lease" or "Lease Agreement") setting forth the terms and conditions by which Logipia was permitted to use and occupy certain space in a warehouse building owned by Duke Realty in Savannah, Georgia (the "Warehouse"). The Lease permitted Logipia to store the products of third parties in the Warehouse. (Third-Party Compl. ¶¶ 7–9, Ex. 1 [hereinafter

---

[1] Logipia is a Georgia corporation with its principal place of business in Port Wentworth, Georgia. (Third-Party Compl. Logipia Against Duke Realty ¶ 1 [hereinafter "Third-Party Compl."], ECF No. 53.)

[2] Logipia alleges "upon information and belief" that Duke Realty is an Indiana limited partnership with its principal place of business in Indianapolis, Indiana. (Third-Party Compl. ¶ 2.)

"Lease Agreement"], ECF No. 53.)  The Lease provides that it "shall be governed by and construed in accordance with [Georgia law]."  (Lease Agreement Art. 8 § 16.02.)

6.    Several of the Lease Agreement's provisions are relevant to the determination of the pending Motion.  Section 8.01 concerns Logipia's release of Duke Realty and provides, in relevant part, as follows:

> All of Tenant's trade fixtures, merchandise, inventory, . . . and other personal property located in or about the Leased Premises, the Building or the Common Areas, *which is deemed to include the trade fixtures, merchandise, inventory and personal property of others located in or about the Leased Premises* or Common Areas *at the invitation, direction or acquiescence (express or implied) of Tenant (all of which property shall be and remain at Tenant's sole risk.  Landlord shall not be liable to Tenant or to any other person for, and *Tenant hereby releases Landlord . . . from (a) any and all liability for theft of or damage to Tenant's Property,* and (b) any and all liability for any injury to Tenant or its employees, agents, representatives, contractors, customers, guests and invitees in or about the Leased Premises, the Building, the Common Areas or the Park*, except to the extent caused directly by the negligence or willful misconduct of Landlord, its agents, employees or contractors.*  Nothing contained in this Section 8.01 shall limit (or be deemed to limit) the waivers contained in Section 8.06 below.  In the event of any conflict between the provisions of Section 8.06 below and this Section 8.01, the provisions of Section 8.06 shall prevail.

(Lease Agreement Art. 8 § 8.01 (emphasis added).)

7.    Section 8.03 concerns Duke Realty's indemnification of Logipia and states, in relevant part, that

> Landlord shall protect, defend, indemnify and hold harmless Tenant, its agents, employees and contractors of all tiers from and against any and all claims, damages, demands, penalties, costs, liabilities, losses and expenses (including reasonable attorneys' fees and expenses at the trial and appellate levels) *to the extent arising out of or relating to any act, omission, negligence or willful misconduct of Landlord or Landlord's agents, representatives, guests, employees or contractors.*  Nothing contained in this Section 8.03 shall limit (or be deemed to limit) the

waivers contained in Section 8.06 below. In the event of any conflict between the provisions of Section 8.06 below and this Section 8.03, the provisions of Section 8.06 shall prevail.

(Lease Agreement Art. 8 § 8.03 (emphasis added).)

8. Section 8.06 concerns the parties' respective waiver agreements and provides in its entirety as follows:

> Notwithstanding anything contained in this Lease to the contrary, *each of Landlord* (and its affiliates, property managers and mortgagees) *and Tenant* (and its affiliates) *hereby waives any and all rights of recovery, claims, actions or causes of action against the other party, or such other party's employees, agents or contractors, for any loss or damage* to the Leased Premises, the Building, the Common Areas and *to any personal property of such party*, arising from any risk which is required to be insured against by Sections 8.04(a)(ii), 8.04(a)(iii) and 8.05(b) above. The effect of such waiver is not limited by the amount of such insurance actually carried or required to be carried, or to the actual proceeds received after a loss or to any deductible applicable thereto, and either party's failure to carry insurance required under this Lease shall not invalidate such waiver. *The foregoing waiver shall apply regardless of the cause or origin of any such claim, including, without limitation, the fault or negligence of either party or such party's employees, agents or contractors.* The Special Form Insurance policies and Workers' Compensation Insurance policies maintained by Landlord and Tenant as provided in this Lease shall include an express waiver of any rights of subrogation by the insurance company against Landlord or Tenant, as applicable.

(Lease Agreement Art. 8 § 8.06 (emphasis added).)

9. Shortly after Logipia entered into the Lease Agreement with Duke Realty, Logipia entered into a Services Agreement with Hyosung,[3] effective March 1, 2018 ("Services Agreement"). (Third-Party Compl. Ex. 2 [hereinafter "Services Agreement"], ECF No. 53.) Under that agreement, Logipia agreed to provide storage

---

[3] Hyosung is a Delaware corporation with its principal place of business in Charlotte, North Carolina. (Compl. ¶ 9, ECF No. 2.)

for Hyosung's products, including "Tire Cord Pet Yarn, Steel Tire Cord and Fabric[,]" in the Warehouse. (Third-Party Compl. ¶ 8; Services Agreement §§ 1–2.) The Services Agreement also contains an arbitration provision, which states in relevant part as follows:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration in the State of North Carolina administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

(Services Agreement § 13.)

10. On or about April 19, 2019, a storm damaged the roof of the Warehouse, resulting in water entry into the Warehouse and damage to and/or destruction of the Hyosung products stored there ("Incident 1"). (Third-Party Compl. ¶¶ 15–16.) A temporary roof covering was subsequently installed at Duke Realty's direction to prevent additional damage to Hyosung's products. (Third-Party Compl. ¶¶ 18–19.) A week later, however, on or about April 26, 2019, the temporary covering failed, improperly activated the Warehouse's sprinkler system, and caused additional Hyosung products to suffer water damage ("Incident 2"). (Third-Party Compl. ¶¶ 19–21.)

11. Hyosung alleges in its Complaint initiating this action that it sought insurance coverage and reimbursement for its losses under its commercial property insurance policy with Travelers ("Travelers Policy") and under its commercial inland marine policy with Hartford ("Hartford Policy") (each a "Policy"). (Compl. ¶¶ 13, 15.)

According to Hyosung, neither insurer agreed to pay Hyosung the full amount of the losses Hyosung claims. (Compl. ¶¶ 19, 21.)

12. Hyosung thereafter initiated this action on December 30, 2019, asserting claims against (i) Travelers for breach of contract for failing to reimburse Hyosung for the full amount of its covered losses under the Travelers Policy, (ii) Travelers and Hartford for a declaratory judgment determining that each insurer must provide insurance coverage under its respective Policy consistent with Hyosung's demands, (iii) USI for negligence on grounds that USI negligently failed to obtain from Travelers the insurance coverage Hyosung requested, and (iv) Logipia for a declaratory judgment determining that Logipia has a contractual duty under the Services Agreement to reimburse Hyosung for its losses and for breach of that same Services Agreement for failing to reimburse Hyosung for those losses. (Compl. ¶¶ 23–44.)

13. Logipia filed its Third-Party Complaint against Duke Realty on July 31, 2020, and Duke Realty filed the current Motion seeking dismissal of the Third-Party Complaint on October 26, 2020. The Court held a hearing on the Motion on January 7, 2021 via WebEx videoconference (the "Hearing"), at which all parties were represented by counsel. The Motion is now ripe for resolution.

II.

LEGAL STANDARD

14. On a motion to dismiss under Rule 12(b)(6), the Court must determine "whether the allegations of the complaint, if treated as true, are sufficient to state a

claim upon which relief can be granted under some legal theory." *Intersal, Inc. v. Hamilton*, 373 N.C. 89, 97 (2019) (citation omitted). The Court "view[s] the allegations [in the complaint] as true and . . . in the light most favorable to the non-moving party[,]" *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017) (citation omitted); however, the Court is "not required . . . to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences[,]" *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 174 N.C. App. 266, 274 (2005) (citation and internal quotation marks omitted).

15. Under Rule 12(b)(6), dismissal of a complaint is proper: "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278 (1985).

16. "When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment." *Schlieper v. Johnson*, 195 N.C. App. 257, 261 (2009). The Court may also reject allegations "that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster v. Francis*, 199 N.C. App. 572, 577 (2009).

ANALYSIS

A.    Duke Realty's Motion to Dismiss[4]

17.    While Hyosung's claims against Travelers, Hartford, and USI concern Hyosung's insurance coverage, Hyosung's claims against Logipia, and Logipia's claims against Duke Realty, are based on the separate contracts that Hyosung and Logipia, and Logipia and Duke Realty, entered into involving the storage of Hyosung's products at Duke Realty's Warehouse.  (Third-Party Compl. ¶ 6.)

18.    Logipia's two third-party claims against Duke Realty each arise from Incident 2.  The first, for express indemnification, rests on Logipia's allegations that Duke Realty, as part of its remediation and repair work at the Warehouse following Incident 1, caused a tarp or other plastic covering to be put into place, that the covering was installed improperly, and that the failure of the covering "caus[ed] improper activation of the Warehouse's sprinkler system[,]" resulting in damage to Hyosung's products.  (Third-Party Compl. ¶¶ 28–29, 31.)  Based on these allegations, Logipia contends that Duke Realty has a duty to indemnify Logipia under paragraph 8.03 of the Services Agreement for any losses Logipia may sustain as a result of Hyosung's claims concerning Incident 2.  (Third-Party Compl. ¶¶ 26–27, 31.)

19.    Logipia's second claim, for breach of contract, is premised on Duke Realty's alleged breach of the Lease Agreement "by failing to properly and promptly restore,

---

[4] Hyosung does not oppose Duke Realty's Motion to Dismiss but seeks denial of Duke Realty's alternative relief should the Court deny Duke Realty's Motion to Dismiss.  (Hyosung's Mem. Opp'n 1, ECF No. 70.)

repair, replace, and/or maintain the roof and/or the sprinkler system at the Warehouse." (Third-Party Compl. ¶ 38.) As with its indemnity claim, Logipia seeks to recover from Duke Realty any damages Hyosung may recover from Logipia for Incident 2, but on the separate ground that "any such liability arose from Duke Realty's breach of contract with Logipia[.]" (Third-Party Compl. ¶ 40.)

20. In support of dismissal, Duke Realty argues that Logipia's claims are barred by the plain and unambiguous language of sections 8.01 and 8.06 of the Lease Agreement. (Duke Realty's Mem. Supp. 10–12, ECF No. 66.) Because the Lease provides, and the parties agree, that Georgia law governs the interpretation of the Lease, the Court shall look to Georgia law to construe the Lease Agreement's terms.

21. Georgia has adopted familiar rules of contract construction. Under Georgia law, "[g]enerally, contract construction is a question of law for the court." *Unified Gov't of Athens-Clarke Cty. v. Stiles Apartments, Inc.*, 295 Ga. 829, 832 (2014). "The cardinal rule of contractual construction is to ascertain the intent of the parties." *Knott v. Knott*, 277 Ga. 380, 381 (2003). "When the terms of a contract are clear and unambiguous, the reviewing court looks only to the contract itself to determine the parties' intent." *Unified Gov't of Athens-Clarke Cty.*, 295 Ga. at 832. "[I]f the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity." *Bowers v. Today's Bank*, 347 Ga. App. 615, 618 (2018) (quoting *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 30 (2013)). "[I]f the ambiguity remains after applying the rules of construction, the issue of what the

ambiguous language means and what the parties intended must be resolved by a jury." *Id.*

22. "A contract is ambiguous if the words used therein leave the intent of the parties in question—i.e., that intent is uncertain, unclear, or is open to various interpretations." *Id.* (quoting *Citrus Tower Boulevard Imaging Ctr. v. David S. Owens, MD, PC*, 325 Ga. App. 1, 8 (2013)). In contrast, "no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation." *Id.*

23. "The intention of the parties is determined from a consideration of the entire contract; and, if possible, all of its provisions should be so interpreted as to harmonize with each other." *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 674 (1945). Further, "it is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless." *Bd. of Comm'rs v. City Comm'rs*, 315 Ga. App. 696, 701 (2012) (citation omitted).

24. Bearing these principles in mind, the Court turns to Duke Realty's argument under section 8.01. Duke Realty contends that because Hyosung's stored products constitute "Tenant's Property"[5] under section 8.01 as a matter of law, Duke Realty is exempted from liability for any damage to Hyosung's products, including as alleged by Hyosung here. (Duke Realty's Mem. Supp. 10–12.) The Court disagrees.

---

[5] "Tenant's Property" is defined under section 8.01 to include "the trade fixtures, merchandise, inventory and personal property of others located in or about the Leased Premises . . . at the invitation, direction or acquiescence (express or implied) of Tenant[.]" (Lease Agreement Art. 8 § 8.01.)

25. Duke Realty's argument is grounded in the first half of the following sentence in section 8.01:

> Landlord shall not be liable to Tenant or to any other person for, and Tenant hereby releases Landlord (and its affiliates, property managers, and mortgagees) from (a) any and all liability for theft of or damage to Tenant's Property, and (b) any and all liability for any injury to Tenant or its employees, agents, representatives, contractors, customers, guests and invitees in or about the Leased Premises, the Building, the Common Areas or the Park, except to the extent caused directly by the negligence or willful misconduct of Landlord, its agents, employees or contractors.

(Lease Agreement Art. 8 § 8.01.)

26. Duke Realty focuses on subsection (a) and contends that the only reasonable construction of this sentence is that Duke Realty is absolved of "any and all liability for theft of or damage to Tenant's Property," requiring dismissal of Logipia's third-party claims. (Duke Realty's Reply Mem. 5, ECF No. 78.) Duke Realty's argument, however, does not adequately grapple with the concluding clause of the sentence— "except to the extent caused directly by the negligence or willful misconduct of [Duke Realty]." It is undisputed that Logipia alleges that the damage to Hyosung's property arising from Incident 2 was caused by Duke Realty's negligence. (Third-Party Compl. ¶ 29.) Thus, for Duke Realty's reading to prevail, the last clause of the sentence must be read to modify subsection (b) and not subsection (a).

27. But, as Logipia contended in its opposition brief, (Logipia's Mem. Opp'n 5– 6, 8–9, ECF No. 71), and at the Hearing, Duke Realty's reading is not the only reasonable construction of this language. To the contrary, the placement of commas after "Tenant's Property" in subsection (a) and following "the Park" in subsection (b) permits a reasonable factfinder to conclude that the ending clause is intended to

modify both subsections (a) and (b), not simply the latter. As such, even if the Court were to conclude that Hyosung's products were "Tenant's Property" under the Lease, as Duke Realty contends,[6] the Court cannot conclude that Duke Realty is exempted from liability for damage to those products under section 8.01 as a matter of law in the face of Logipia's allegations of Duke Realty's negligence.[7]

28.    Duke Realty's argument for dismissal based on section 8.06 faces a similar fate. For that argument, Duke Realty contends that section 8.04 required Logipia to provide insurance for Hyosung's claimed losses and that section 8.06 required Logipia "to waive its right to recover from Duke Realty for those losses[,]" necessitating dismissal of Logipia's third-party claims. (Duke Realty's Mem. Supp. 11.) Duke Realty ignores, however that section 8.06 specifically provides, in relevant part, as follows:

> [E]ach of Landlord (and its affiliates, property managers and mortgagees) and Tenant (and its affiliates) hereby waives any and all rights of recovery, claims, actions or causes of action against the other party, or such other party's employees, agents or contractors, for any loss or damage to the Leased Premises, the Building, the Common Areas and *to any personal property of such party*[.]

---

[6] Although Logipia challenges Duke Realty's contention that Hyosung's products are "Tenant's Property" as a matter of law, the Court need not consider the parties' competing arguments to resolve the Motion.

[7] Section 8.03 provides further support for Logipia's construction of section 8.01. Indeed, by requiring Duke Realty to indemnify Logipia for damages due to Duke Realty's negligent or willful misconduct, section 8.03 suggests that the parties did not intend for Duke Realty to avoid liability for its own negligence. (*See* Lease Agreement Art. 8 § 8.03 ("Landlord shall . . . indemnify and hold harmless Tenant . . . from and against any and all claims, damages, demands, penalties, costs, liabilities, losses and expenses (including reasonable attorneys' fees and expenses at the trial and appellate levels) to the extent arising out of or relating to any act, omission, negligence or willful misconduct of Landlord or Landlord's agents, representatives, guests, employees or contractors.").) Logipia's construction of section 8.01 leads to the same conclusion.

(Lease Agreement Art. 8 § 8.06 (emphasis added).)   The concluding phrase of the relevant language makes clear that Logipia's waiver of claims for loss or damage to personal property covers only personal property of Duke Realty and its related parties—not personal property of third parties like Hyosung.   Accordingly, Duke Realty's argument under section 8.06 is without merit.

29.    For each of these reasons, therefore, the Court concludes that Duke Realty's Motion to Dismiss should be denied.

B.    <u>Duke Realty's Claim for Alternative Relief</u>

30.    Duke Realty moves in the alternative under Rule 14 to stay Hyosung's claims against Logipia and compel arbitration of those claims.   If successful, Duke Realty then seeks to sever Logipia's third-party claims against it and transfer those claims to Georgia for adjudication.   (Duke Realty's Mem. Supp. 14–17.)

31.    Under Rule 14, Duke Realty, as a third-party defendant, may assert any defense that is available to the third-party plaintiff—here, Logipia.   *See* N.C. R. Civ. P. 14(a) ("The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim.").   Employing this provision, Duke Realty contends that it is permitted under Rule 14 to assert the "defense of arbitration" to invoke the arbitration provision in the Services Agreement between Hyosung and Logipia and compel arbitration of the dispute between Hyosung and Logipia in this action.   Duke Realty seeks this course despite the fact that Logipia and Hyosung long ago agreed to waive arbitration under their agreement and proceed with the litigation of their current dispute in this forum.

32. The Court concludes that Duke Realty's request for alternative relief is without merit. As an initial matter, Duke Realty's purported defense of arbitration is not an affirmative defense under Rule 8. *See* N.C. R. Civ. P. 8(c). Duke Realty argues that it is an affirmative defense, relying upon language in *Cooper v. Ismail*, No. COA18-1166, 2019 N.C. App. LEXIS 579, at *2 (N.C. Ct. App. July 2, 2019), an unpublished decision of the North Carolina Court of Appeals, stating that "the right to enforce a contractual arbitration agreement is an affirmative defense[,]" (*see* Duke Realty's Mem. Supp. 14–15). However, the Court of Appeals made this statement in concluding—unremarkably—that arbitration is "a [contractual] right that may be waived[,]" *Cooper*, 2019 N.C. App. LEXIS 579, at *2, and neither *Cooper* nor the case on which it relied, *Servomation Corp. v. Hickory Construction Co.*, 316 N.C. 543, 544 (1986), discussed or considered Rule 8 in reaching their conclusions. Indeed, the only arbitration-based affirmative defense contemplated under Rule 8 is "arbitration and award," N.C. R. Civ. P. 8(c), which neither party contends is applicable here.

33. That said, Duke Realty correctly notes that Rule 14 does not limit a third-party defendant to only those affirmative defenses a third-party plaintiff has under Rule 8. However, the Court concludes that a defense of arbitration is not one that Rule 14 contemplates shall be available, if available at all, to a third-party defendant, like Duke Realty, who is not a party to the third-party plaintiff's arbitration agreement, particularly when the third-party plaintiff has waived its right to arbitrate. Given that a non-party's right to enforce an arbitration agreement is available only in limited circumstances, *see, e.g.*, *GE Energy Power Conversion Fr.,*

*SAS, Corp. v. Outkumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643–44, (2020) ("[A]rbitration agreements may be enforced by nonsignatories through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." (citation and internal quotation marks omitted)), none of which are present here, it follows that Duke Realty may not enforce Logipia's right to arbitrate in its Services Agreement with Hyosung.

34.     This is particularly true here where it is undisputed that Logipia has knowingly and voluntarily waived that right. (Logipia's Mem. Opp'n 9–10; Hyosung's Mem. Opp'n 4.)  Our courts have long recognized that the right to compel a party to arbitrate a dispute is a waivable contract right, *see, e.g.*, *Cyclone Roofing Co. v. David M. La Fave Co.*, 312 N.C. 224, 229 n.3 (1984) ("A party may, of course, expressly waive contractual arbitration."), and that a knowing and voluntary waiver of a contract right effects a release "from the terms of the original proposition[,]" *Johnson v. Noles*, 224 N.C. 542, 545 (1944).  Because Rule 14(a) expressly provides that a third-party defendant may assert defenses "which the third-party plaintiff *has* to the plaintiff's claim," *see* N.C. R. Civ. P. 14(a) (emphasis added), the Rule makes plain that a third-party defendant may assert only those defenses the third-party plaintiff has against the plaintiff at the time the third-party defendant responds to the third-party complaint.  Since Logipia's waiver extinguished its right to arbitrate its dispute with Hyosung before Duke Realty filed its response to the Third-Party Complaint, Duke Realty may not avail itself of Logipia's arbitration right through Rule 14.  *See, e.g.*, *Falcon Tankers, Inc. v. Litton Systems, Inc.*, 300 A.2d 231, 237–38 (Del. Super. Ct.

1972) (holding under Delaware's Rule 14, which is identical to federal Rule 14,[8] that third-party plaintiff's waiver of its right to arbitrate precluded third-party defendant's right to invoke the affirmative defense of arbitration and award).

35.     For each of these reasons, therefore, the Court concludes that Duke Realty may not use Rule 14 to compel arbitration of Logipia's dispute with Hyosung.  In light of the Court's ruling, the Court further concludes that Duke Realty's request to stay Hyosung's claims against Logipia and to sever Logipia's third-party claims against Duke Realty and transfer those claims to Georgia should likewise be denied.

IV.

CONCLUSION

36.     **WHEREFORE**, for the reasons set forth above, the Court hereby **DENIES** both Duke Realty's Motion to Dismiss and its alternative request for relief.

**SO ORDERED**, this the 16th day of March, 2021.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge

---

[8] Our Supreme Court has noted that North Carolina's Rule 14 is "substantially similar" to federal Rule 14.  *See Selective Ins. Co. v. NCNB Nat'l Bank*, 324 N.C. 560, 566 (1989).